Tompkins v. Batie.

MILTON J. TOMPKINS, PLAINTIFF IN ERROR, v. JOHN BATIE, DEFENDANT IN ERROR.

1. **Chattel Mortgage**: RELEASE OF, BY TENDER OF AMOUNT SECURED. A mere tender of the amount secured by a chattel mortgage to the creditor on the day fixed for payment, although not accepted, nor kept good, has the effect to release the property from the lien of the mortgage.

2. ———: TENDER AFTER DEFAULT. But if the tender be made after default of payment at the stipulated time, it must be kept good, or it will be entirely unavailing.

3. **Tender Must be Unconditional.** A tender of money in payment of a debt, to be available, must be without qualification, that is, there must not be anything raising the implication that the debtor intends to cut off, or bar a claim for any amount beyond the sum tendered.

4. ———: RULE APPLIED. In the case at bar, the evidence showed that the offer of payment was this: "I showed him $500.00, and told him he could have it for his claim." *Held*, that this was a conditional offer, and unavailing as a tender.

ERROR to the district court of Dodge county. The case was replevin to recover possession of certain personal property which the defendant, Batie, had mortgaged to secure notes executed by him to Reynolds, who assigned same to First National Bank of Fremont, who assigned same to Tompkins. Batie's answer alleged, in substance, that plaintiff's only claim to the property arose from a pretendedpurchase of the chattel mortgage, whereby the property had been conveyed to one Wilson Reynolds; that the notes were usurious, and after they became due and while yet in possession of the property he, (Batie), tendered to Reynolds the sum of $500—enough to satisfy his claim, with legal interest; that after the tender, Reynolds, the bank, and Tompkins, the plaintiff, conspired together, and had the notes and mortgage transferred from Reynolds to the bank and from the bank to Tompkins. The reply denied the conspiracy, denied the tender, and alleged that Tompkins purchased from the bank, who was a *bona fide* holder. Trial before POST, J., and a jury. Verdict for defendant, that right of property was in him; value, $801.28; damages, five cents. Judgment thereon and for return of property, etc., from which plaintiff prosecutes this petition in error.

*Marshall & Sterrett,* for plaintiff in error, cited *Cheminant v. Thornton,* 2 Carr. & Payne, 50. *Mitchell v. King,* 6 Id., 237. *Sutton v. Hawkins,* 8 Id., 259. *Kortright v. Cady,* 21 N. Y., 367. *Miller v. Holden,* 18 Vt., 337. *Strong v. Harvey,* 3 Bing., 304. *Glascott v. Day,* 5 Esp., 48. *Wood v. Hitchcock,* 20 Wend., 47. *Potts v. Plaisted,* 30 Mich., 149. *Richardson v. Boston Chemical Laboratory,* 9 Met., 42. *Robinson v. Fitch,* 26 Ohio State, 659. 1 Parsons Notes and Bills, 218, 224. *Roxborough v. Messick,* 6 Ohio State, 448. *Crain v. McGoon,* 86 Ill., 433. *Caruthers v. Humphrey,* 12 Mich.,

270.   *Adams v. Nebraska City National Bank*, 4 Neb.,
370.   *Brown v. Bement*, 8 Johns., 96.   *Perre v. Castro*,
14 Cal., 519.   *Maynard v. Hunt*, 5 Pick., 240.   *Crosby
v. Chase*, 17 Maine, 371.   *Conner v. Carpenter*, 28 Vt.,
237.

*N. H. Bell*, for defendant in error, cited *Kortright v.
Cady*, 21 N. Y., 343.   *Jackson v. Crafts*, 18 Johns., 110.
*Edwards v. Farmers' Ins. and Loan Co.*, 21 Wend., 467.
*Potts v. Plaisted*, 30 Mich., 149.   *Moynahan v. Moore*, 9
Mich., 9.   *Caruthers v. Humphrey*, 12 Mich., 270.   *Van
Husan v. Kanouse*, 13 Mich., 303.   *Winchester v. Ball*,
54 Me., 558.   *West v. Crary*, 47 N. Y., 423.   2 Jones
on Mortgages, sec. 896.   *Reed v. Marble*, 10 Paige Ch.,
409.   *Hetzell v. Barber*, 6 Hun., 534.

LAKE, J.

The principal question in this case was raised in the
court below by an instruction to the jury, of which the
following is a copy: "If you find from the evidence
that illegal interest has been taken or contracted 'for,
and that the bank was not the *bona fide* holder thereof"
(the note and mortgage), "then, to make the tender
sufficient in amount, it was enough for Batie to tender
the sum received by him without any interest; and in
order to discharge the lien of the mortgage, such
tender, if refused, need not be kept good, or the money
brought into court."

The act of tender here referred to took place long
after the maturity of the note which the mortgage was
given to secure, and the question is, whether the last
proposition of this instruction states the law correctly.
Counsel on each side of the question have argued it
with consummate skill, and have fortified their re-
spective positions with numerous authorities, so that
we are relieved from the labor of extended research.

From the cases cited, it is certain that there is much conflict in the more recent decisions as to the effect of a tender upon a security, if made after what is termed the "law day" has passed, while probably there is none as to the fact that if made on that day it will release the property from the lien. At the common law, to have this effect, the tender must be made on the day the debt falls due, but need not be kept good.

The case of *Kortright v. Cady*, 21 N. Y., 343, is one on which great reliance is placed by defendant's counsel to sustain the charge of the court. This, however, appears to have been decided by a divided court, and Denio, J., while concurring in the result, did so, as he said, on the ground that the question was so far determined by previous decisions in that state, "that it would be indiscreet to examine it in the light of reason and the analogies of the law." But Welles, J., went further, and gave a very able dissenting opinion, wherein he reviewed the course of decisions by the courts of New York, and concluded that the better authority was that a mere tender of payment after the maturity of the debt would not release the lien of a mortgage given to secure it. However, the rule of the majority of the court in that case is now to be regarded as the settled law of New York, as it confessedly is of Michigan.

But in California, where the contrary rule prevails, it was said in one case that, "The debtor is as much in default for not paying when the debt is due, as the creditor is in default for not receiving the money afterward when offered. It would be very harsh to hold that the debt is lost—the general effect of loosing the security by a mere refusal, at a particular moment, to receive it—that refusal induced, too, as it might be, by a variety of circumstances morally excusing it, or at least, not grossly violative of any positive duty, and

productive of little or no injury to any one." *Perre v. Castro*, 14 Cal., 519. See also *Himmelmann v. Fitzpatrick*, 50 Id., 650, and *Crain v. McGoon*, 86 Ill., 431. In the last named state it is held that a tender of the amount due after the time agreed upon, unless kept good, will not operate to release the lien of a mortgage given to secure it. And this, we think, is a wholesome rule. The foregoing, and most of the cases cited, relate to real estate mortgages, whereas the one now under consideration is a mortgage of chattels, which, in this state is, in its legal effect, strikingly analogous to a mortgage of real property under the common law. "According to the strict rule of the common law, a mortgagor who failed to perform the conditions contained in the mortgage would forfeit his right to the land, or to redeem it by *subsequently* tendering the amount due upon the mortgage." Broom & Hadley's Com., Vol. 1, Am. Ed., 612, N. 288. In case of such forfeiture the mortgagor could obtain relief only in a court of equity, wherein the land mortgaged was treated as a mere pledge which the mortgagee held as security for the debt due to him.

In *Adams v. Nebraska City National Bank*, 4 Neb., 370, it was held, "That a chattel mortgage transfers to the mortgagee the whole legal title to the things mortgaged, subject only to be defeated by performance of the condition." And in *Tallon v. Ellison & Sons*, 3 Id., 63, it was said, "The legal title passes to the mortgagee, subject to the mortgagor's right to perform the condition, and after default the legal title is said to become absolute in the mortgagee." But the mortgagor has a right to redeem the mortgaged property, at any time before it is sold, by paying the mortgage debt.

Such being the character of the instrument, and the rights of the parties under it, there seems to be good

reason for adopting as our guide those adjudications
which were made upon mortgages governed by the
principles of the common law, rather than those in
which the mortgage is regarded as a mere security for
a debt, and the mortgagor regarded as the owner of
the fee until his right of redemption is foreclosed.
Accordingly, we feel constrained to hold, as was held
in *Crain v. McGoon*, *supra*, that a tender after the
law day must be kept good or it will be entirely una-
vailing as such.

There is another question really back of the one
we have been considering, discussed by counsel, which
must not be overlooked. It is whether what is relied
on for that purpose is sufficient in law to constitute a
tender. It was this as disclosed by the testimony of
the defendant himself from which we quote as follows:

Q. You may state whether you ever made a tender
to Mr. Reynolds of any sum of money on account of
those notes?

A. Yes, sir.

Q. How much did you tender him?

A. $500.00. That is, I showed him $500.00.

Q. And told him he could have it for his claim?

A. Yes, sir, it was settled with me.

Q. Did he take it?

A. No, sir, he said he wouldn't take it.

Q. You may state whether you have always been
ready and willing to pay him $500.00 in settlement of
the notes?

A. Yes, sir, up to the time he took my property.

There was some further examination which disclosed
the fact that the reason of the refusal to take the sum
offered was its alleged insufficiency to cover the amount
claimed to be due.

A *tender* is defined to be the offer of a sum of money
in satisfaction of a debt or claim by producing and

showing the amount to the creditor, or party claiming
and expressing verbally a willingness to pay it.   Wor-
cester.   The tender must be unconditional.   Brown's
Law Dictionary, 352.  "Thus, although a party who
tenders money has a right to exclude any presumption
against himself, that the sum tendered is in part pay-
ment of the debt; yet, if he add a condition that the
party who receives the money shall acknowledge that
no money is due, this will invalidate the tender."
Chitty on Contracts, 699, marginal.   And in *Wood v.
Hitchcock*, 20 Wend., 47, it was held that a tender of
money in payment of a debt to be available must be
without qualification, that is, there must not be any-
thing raising the implication that the debtor intended
to cut off or bar a claim for any amount beyond the
sum tendered; and it was accordingly held that the
tender of a sum *in full discharge* of all demands of the
creditor was not good.   In this case COWEN, J., said,
"It was clearly a tender to be accepted as the whole
balance due, which is holden bad by all the books."
The reason of this rule is manifest, for if the tender be
of a sum, *as all that is due*, that being disputed, and the
creditor receives it, under these circumstances it might
compromise his rights in seeking to recover more,
whereas, if the same sum were tendered *unconditionally*
no such effect could follow.

Such being the law, let us apply it to the testimony
of the defendant, and how stands the alleged tender?
He says: "*I showed him $500 and told him he could have
it for his claim.*"   That is, if the plaintiff would surren-
der his entire demand, he would give him the $500,
otherwise not.   This certainly was within the operation
of the rule that a conditional offer of payment which
the creditor cannot accept without barring all further
claim is unavailing as a tender.   Here was a dispute
as to the amount actually due, and the offer was made

evidently with the view to an adjustment of the whole matter, and to cut off all further claim.   And had the offer been accepted, such doubtless would have been the effect.

Such being our views, the judgment must be reversed and a new trial awarded.

REVERSED AND REMANDED.

COBB, J., dissents.