AUGUSTUS L. MOYER, APPELLANT, v. ANDREW J. LEAVITT, APPELLEE.

FILED SEPTEMBER 16, 1908. No. 15,277.

1. Pledges: TENDER: RELEASE OF LIEN. A tender of the amount secured by pledge of personal property made upon the maturity of the debt, although not accepted nor kept good, will release the property from the lien of the pledge.

2. ———. *Wilkins v. Redding*, 70 Neb. 182, criticised

3. ———: FRAUD: INTEREST. The pledgee of personal property fraudulently represented that he had sold the property pledged and sent $20 to the pledger as a part of the purchase price, which the latter, relying upon the fraudulent representations, retained until he discovered the fraud. *Held*, That the pledger was not liable for interest on the $20.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Allen G. Fisher* and *Justin E. Porter*, for appellant.

*Albert W. Crites, contra.*

EPPERSON, C.

This is a replevin action, and presents to the court a controversy between the parties as to the title and the right to the possession of a certain gold ring with a diamond setting, valued at $200. The facts out of which the trouble arises were related by defendant substantially as follows: April 3, 1902, the defendant found himself in the city of Crawford without money, but with the diamond here in controversy. He met the plaintiff, and, after verbal negotiations, borrowed from him $50, payable in three months, and pledged the diamond ring as security therefor. Defendant agreed to pay, and plaintiff agreed to accept, $5 as interest for the loan. At the same time the defendant gave plaintiff authority to sell the ring for $150. On June 14 following, the defendant sent to the

plaintiff from Sturgis, South Dakota, a money order for $55, and requested plaintiff to send him the ring. Plaintiff answered, stating that he had sold the ring for $75, returned the money order and his personal check for $20. Defendant cashed the money order and the check. Early in January, 1906, the defendant, who had returned to Crawford, saw the ring in the possession of the plaintiff, visited him at his place of business, and, pretending that he only wished to examine the diamond, obtained possession thereof. This he was enabled to do because the plaintiff did not recognize him as the pledger. Once in possession of the ring, he made his identity known, and tendered to the plaintiff $70 in currency, representing the $50 loaned and the $20 received by check. This the plaintiff refused to accept; whereupon defendant, with notice to plaintiff, deposited the money for the plaintiff with a business man in Crawford. The plaintiff then instituted this action, alleging that he was the owner of the property. Upon trial defendant obtained judgment, and plaintiff has appealed.

Plaintiff testified that the $50 advanced by him was a loan, but he says that he was authorized to sell the ring for $75; that the $5 to be retained was not interest, but was an agreed compensation for his trouble in making the sale. He testified further that he actually sold the ring to a traveling man, and later repurchased. He further testified that no particular time was mentioned for the payment of the loan, but that it was to run a month or two. From the evidence we are convinced that default had not been made in the payment of the loan at the time defendant remitted to the plaintiff the sum of $55 on June 14, 1902. If plaintiff had made a sale, as he claimed and testified, it was ratified by the defendant. Plaintiff's evidence as to this transaction is not convincing. The jury found against him, and we accept their verdict as final upon this proposition. The conduct of the defendant did not amount to a ratification of a sale by the plaintiff as pledgee to himself. The plaintiff was required to return

the diamond to the defendant at any time it was called for, if within his power to do so and the amount it secured was tendered to him, unless, of course, there had been a change of title from the defendant to the plaintiff, or an unauthorized transfer had been ratified by the defendant. The plaintiff acquired no rights whatever by the pretended change in his holding from that of bailee to that of owner. It being established that plaintiff had not in fact sold the pledged property, defendant was entitled to possession when he detected the plaintiff's deceit. About one month after the money tendered had been deposited, the depositary refused to hold it longer, and it was taken up by the defendant. The controlling question in the case is thus presented. Can the defendant recover in this action without making his tender good?

It is the general rule that an unaccepted tender of the amount due after maturity of the debt, although not kept good, discharges the lien. As to chattel mortgages, it is the rule in this state that, if the tender be made after default of the payment at the stipulated time, it must be kept good, or it will be entirely unavailing, but that a tender of the amount secured on the day fixed for payment, although not accepted and not kept good, will release the property from the lien. In *Wilkins v. Redding,* 70 Neb. 182, it was held: "Where personal property is pledged to secure the payment of a debt, the pledger cannot recover the property in a replevin action without paying or tendering the whole amount of the debt and keeping good the tender." The learned commissioner, writing the opinion in that case, failed to distinguish between tenders made upon the maturity of the debt and those made after default, and failed to distinguish between a tender necessary to release the lien of a chattel mortgage and that of a pledge. We find that the reasoning of that case was founded in part on *Tompkins v. Batie,* 11 Neb. 147, wherein it was held that an unconditional tender kept good is necessary to defeat the mortgagee's action, but the commissioner overlooked the fact that the rule he quoted from

*Tompkins v. Batie* was expressly applied to a tender made after the maturity of the note.   There was another rule announced in *Tompkins v. Batie* relative to the effect of a tender made by the mortgagor of chattels, which clearly distinguishes *Wilkins v. Redding* from the case at bar,.for it is there also held: "A mere tender of the amount secured by a chattel mortgage to the creditor on the day fixed for payment, although not accepted, nor kept good, has the effect to release the property from the lien of the mortgage."   This rule was reaffirmed in *Musser & Co. v. King*, 40 Neb. 892, and *Gould v. Armagost*, 46 Neb. 897.   In *Wilkins v. Redding* the court seemed to consider that the same rule which controls the lien of a chattel mortgage applies to the lien of a pledge.   But, if the same rule controls in both classes of cases, it may be seen that *Wilkins v. Redding* does not control the case at bar, inasmuch as the tender of $55 was made by the defendant herein upon the maturity of the debt which the property was pledged to secure.   The remittance made by defendant to the plaintiff prior to the defendant's default in paying the loan was a tender of the amount due, as no objection was made to the form of that tender.   The money order was returned by plaintiff, not because he was dissatisfied with the manner of payment, but because he had converted the diamond to his own use, and he returned the money order and his own check for $20 apparently for the purpose of deceiving the defendant.   After the defendant had learned that the plaintiff had not in fact.sold the diamond, he again tendered the amount of the loan. If the defendant's right to possession depended upon this tender, we think that it would be sufficient.   In view of the deceit practiced by the plaintiff, he can hardly be heard to say that the loan, even at this late date, had matured, and that this tender which was not kept good was insufficient.  If the defendant was then in default, it was because of the plaintiff's fraud.   Defendant had not paid the loan sooner because he believed that his debt was paid by the sale of the property.

It is argued by the plaintiff that the tender of $70 was insufficient because plaintiff was entitled to interest upon the $20 and the interest was not included in the tender. Three reasons oppose this theory. The repayment of the $20 was not secured by the pledge. No tender of that sum was necessary in order to enable the defendant to recover. Although the defendant had the use of the $20, it is apparent from the evidence that the plaintiff had use of defendant's property worth at the time of the trial $200. The author of this opinion does not know the value of the use of diamonds; but, in the absence of enlightenment, we take it that the plaintiff was benefited by the use of the diamond to an extent at least equal to the benefits resulting from defendant's use of the $20. And, again, there was no express or implied agreement to pay interest on the $20; nor did the defendant even wrongfully detain it, nor damage the plaintiff by not repaying it to him. The law will not charge defendant with interest. We find therefore that at the maturity of the loan defendant had tendered the amount due, and that, when he discovered the deceit practiced by the plaintiff, he again tendered the amount due upon the loan and kept that tender good until after the institution of this suit. He later deposited the amount with the clerk of the lower court. Under the circumstances in this case, the plaintiff having through deceit converted the property to his own use, and having twice without good reason rejected the amount due to him when tendered, and claiming to be the owner of the property in controversy, we think that he has abandoned his lien, or at least cannot insist that the defendant has failed to make his tender good.

There is no prejudicial error in the record, and we recommend that the judgment of the district court be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.