SECURITY STATE BANK, APPELLANT, V. WATERLOO LODGE ET AL., APPELLEES.

FILED OCTOBER 22, 1909.    No. 15,782.

1. Mortgages: TENDER: DISCHARGE: OFFER TO CONFESS JUDGMENT. As a general rule the tender of the exact sum due upon a mortgage debt upon the "law day" in accordance with the terms of the instrument operates to discharge the mortgage lien, and thereafter the only liability is upon the note. An offer to confess judgment in such a case after action is brought is sufficient to relieve the defendant from costs and interest accruing thereafter without paying the money to the clerk of the court at the time the offer is made.

2. ———: ———: INTEREST. A court of equity will not be diligent in seeking for reasons to permit a creditor to recover interest when the debtor has tendered the full amount due, and when the creditor has by his own conduct lost the right to recover interest.

3. Tender: SUBSEQUENT DEMAND. If a creditor prevents payment by wrongfully refusing to accept the amount due when tendered by the debtor and some time afterwards demands it, the debtor is entitled to a reasonable opportunity to comply with the demand.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*John C. Wharton* and *Byron G. Burbank,* for appellant.

*Baldrige, De Bord & Fradenburg, J. I. Negley* and *T. A. Hollister, contra.*

LETTON, J.

This is an action to foreclose a mortgage. The note to secure which the mortgage was given was made by the Waterloo Lodge No. 102, A. F. & A. M., for the sum of $2,000, dated August 19, 1902, and due five years after date, with interest at 6 per cent., and was payable to the Citizens State Bank of Waterloo, or order, at its banking office in Waterloo, Nebraska. The mortgage securing the note contained an agreement that the mortgagor "may pay one hundred dollars or any multiple of that sum at any interest pay day." The annual interest was paid to August 19, 1905. The 19th day of August, 1906, fell upon Sunday. On the 18th of August Mr. Wilkins, master of the lodge, went to the office of the Citizens State Bank of Waterloo and tendered to Mr. H. B. Waldron, the cashier, $2,120 in full payment of the note and interest, under the provision allowing the payment of $100 or any multiple upon any interest pay day. Mr. Waldron refused to receive the principal, giving as a reason that the note was not due for a year, but he accepted the $120 interest. On Monday, the 20th, the $2,000 principal was again tendered at the same place with 35 cents as accrued interest. This was also refused. Mr. Waldron was then informed that the money would be placed on deposit at the Bank of Waterloo subject to the order of the Citizens State Bank, and this was immediately done. The money remained on deposit until August 19, 1907, when it was withdrawn, and again taken by Mr. Wilkins to the office of the Citizens State Bank and tendered to Mr. Waldron. At this time Mr. Waldron refused it, saying that the amount was insufficient. He was again notified that the money would be on deposit at the Bank of Waterloo as before, and it

was so placed. On October 28, 1907, the panic of that year occurred. The evidence shows that banks all over the country stopped payment in money, especially in small sums, and the evidence further shows that the daily transactions between the Citizens State Bank and the Bank of Waterloo were carried on by means of cashier's checks, which in sums of over $100 were usually made payable through the Omaha clearing house and with the Omaha clearing house funds. Shortly before 4 o'clock in the afternoon of October 30, Mr. Waldron went to the Bank of Waterloo and said to the cashier that certain money had been left there by the Masonic lodge in payment of a note payable to the Citizens State Bank, and said: "I want to make a demand for this money." The cashier handed him a draft upon the First National Bank of Omaha for $2,000.35. He refused the draft and demanded legal tender currency. The cashier said: "Mr. Waldron, are you paying your customers in legal tender currency these days?" To which he replied: "That has nothing to do with the case." After his refusal the bank immediately telephoned to Omaha and procured $2,000 in gold, which arrived in Waterloo the next day about 5:30 P. M., and after banking hours. The next day, during banking hours, Mr. Wilkins took $2,001.15 in gold to the Citizens State Bank and tendered it to Mr. Waldron, who refused to receive it. This action was begun that day. On November 14, Mr. Wilkins again tendered to Mr. Waldron at the bank $2,019.49 in currency. This included $7.74 interest, $9.25 costs, and $2.50 for good measure. An offer to confess judgment for the same sum was also made and filed in court that day. Before the maturity of the note it had been indorsed and delivered to the Security State Bank of Washington, Nebraska, of which bank Mr. H. B. Waldron, the cashier of the Citizens State Bank of Waterloo, was president. At the trial the district court found substantially the foregoing facts. It further found "that it was a physical impossibility for

20

the Bank of Waterloo to make payment of the sum of $2,000.35 on October 1, 1907, in legal tender currency." It further found that, by virtue of the tenders made, the mortgage lien was satisfied and discharged, and that the plaintiff was not entitled to recover any interest, except as included in the offer to confess, or any costs other than the amount so included, and rendered a decree that the defendant should pay to the clerk for the plaintiff the sum of $2,019.49; and, this having been done, ordered that the petition of the plaintiff be dismissed, and that a release and satisfaction of the mortgage be delivered, or, in lieu thereof, that the decree so operate. From this decree plaintiff has appealed.

1. Appellant first contends that the tender of August 18, 1906, was premature because the interest pay day was August 19. The refusal to accept the money, however, was not made for this reason, and the plaintiff, having accepted the interest upon the 18th, cannot now say that, while the tender as to the interest was not premature, the tender as to the principal was. Moreover, the 19th was on Sunday, and the tender was renewed on Monday.

2. The next point made is that the tender of November 2 was of no effect because made after the suit was commenced. There is nothing in the record to show at what hour on November 2 the petition in this case was filed or summons served.

3. The next contention is that the tender of August 20, 1906, was not kept good. The money tendered on August 20, 1906, was immediately deposited in the Bank of Waterloo to the credit of the Citizens State Bank, and was there at all times ready for the plaintiff until on and after October 28, 1907, when a financial panic occurred and nearly every bank in the United States suspended payment of actual money, except in small amounts. Taking advantage of this condition of affairs, the president of the plaintiff bank demanded the deposit from the Bank of Waterloo within an hour before the close of banking hours, and at a time when it may safely be presumed he

had reason to believe that a bank in a small country town would be unlikely to have that amount of currency on hand, and at such an hour in the day as probably to make it impossible to procure the money from some other place before the close of banking hours. The money was procured, but it reached Waterloo after banking hours next day, and was again tendered within what, under all the circumstances, was a reasonable time after demand. The question is presented whether, under such circumstances, the defendant was bound to have legal tender currency or gold in such a position that immediately upon demand it was required to produce the same or lose the benefit of the lawful tender made by it at the proper time and place. A court of equity will not be diligent in seeking to find reasons to permit a creditor to recover interest when the debtor has attempted to pay, and when the creditor has by his own conduct lost the right to interest, and more especially in a case where he seeks to take advantage of peculiar circumstances to enforce a demand which, if made, might have been satisfied at any time for 14 months preceding that particular day. In a case where an assignee failed to put his assignment on record, or to give the debtor notice of the assignment, or of his residence, or of the place where payment could be made, Chancellor Walworth said: "A court of equity, however, will not permit the mortgagee, or his assignee, to take an unconscientious advantage of the mortgagor who is willing to pay at the time prescribed, but who is unable to do so in consequence of the act of the other party." *Noyes v. Clark,* 7 Paige Ch. (N. Y.) 179. The same principle is applied in another case under somewhat like circumstances, and the court say: "By wrongfully refusing to take the money, the creditor violates his own contract and the debtor's right. By such a wrong, he cannot put upon the debtor an unreasonable burden of keeping the tendered money. There is other money as good as that. If the creditor prevents payment by wrongfully refusing to accept it, and afterwards demands it, the debtor is en-

titled to a reasonable opportunity to comply with the demand." *Strafford v. Welch*, 59 N. H. 46. *Gilmore r. Holt*, 4 Pick. (Mass.) 258; *Sharp v. Todd*, 38 N. J. Eq. 324. Even in an action at law the same principle is applied. *Town v. Trow*, 24 Pick. (Mass.) 168.

4. The principal point argued in the appellant's brief is that the use of the money tendered by the Bank of Waterloo defeats the tender, and it is insisted that, since the money was deposited with the bank as a general deposit, commingled with the general funds of the bank, and not kept as a special deposit, the tender was not kept good. Assuming that it was necessary to keep the tender good, we think there is no merit in this contention. All that the creditor could ask for after his refusal of the tender was that the debtor should have the money ready to pay over to him upon demand, or within a reasonable time thereafter. The identical currency which had been tendered did not become the property of the creditor upon his refusal to accept the tender. It was unnecessary, therefore, to make a special deposit of it with the bank. If the defendant had used this money, and been unable to meet the demand within a reasonable time, the result would be different, but this was not the case here. It is clearly shown that the defendant received no interest or advantage from the deposit of the money. It was subject to the creditor's demand at any time up until October 28, the day the evidence shows banks generally suspended payment in gold or currency. The fact that the money was in the bank as a general deposit in nowise prejudiced the plaintiff or interfered with its rights. It could have had the money any day for 14 months, and it was only when in all probability its officers knew it could not be brought forth immediately that it manifested an inclination to accept it. *Davis v. Parker*, 14 Allen (Mass.) 94; *Cheney v. Libby*, 134 U. S. 68; *Kerr v. Moore*, 6 Cal. App. 305, 92 Pac. 107; *Shields v. Lozear*, 22 N. J. Eq. 447; *Dickerson v. Simmons*, 141 N. Car. 325.

5. It is next insisted that the tender was not kept good by bringing the money into court. The whole amount due had been repeatedly tendered and refused. Within a few days after the action was brought an offer to confess judgment for the principal, the accrued interest since the date of the last tender, and the costs then incurred was made, and on the same day this amount was tendered to the plaintiff's president at the Citizens State Bank, and again refused, and at the trial this amount was actually produced in court and paid to the clerk of the court. It is a general rule, to which it is possible there may be exceptions under special circumstances, that the tender of the exact sum due upon a mortgage debt upon the "law day" in accordance with the terms of the instrument operates to discharge the mortgage lien, and, whether there are any exceptions to this rule or not, we think this case does not afford room for doubt. When the amount actually due was tendered on the "law day," which in this instance was the day when by the terms of the agreement the debt was payable if the debtor exercised his option, the lien of the mortgage was discharged, and thereafter the only liability was upon the note. *Tompkins v. Batie,* 11 Neb. 147; *Moyer v. Leavitt,* 82 Neb. 310; *Musser & Co. v. King,* 40 Neb. 892; *Gould v. Armagost,* 46 Neb. 897; note to *Moynahan v. Moore,* 77 Am. Dec. 468, 489 (9 Mich. 9); *Dickerson v. Simmons,* 141 N. Car. 325; *Exchange Fire Ins. Co. v. Norris,* 26 N. Y. Supp. 823; *Parker v. Beasley,* 116 N. Car. 1, 33 L. R. A. 231, and note.

This being so, under the provisions of the code the offer to confess judgment was amply sufficient without paying the money to the clerk of the court at the time the offer was made, and defendant was relieved from all costs and interest accruing thereafter. It is true that in actions to redeem, in actions of ejectment against the mortgagee in possession, and like proceedings, it has frequently been held that the amount due must be brought into the court with the filing of the bill or of the petition, but this is a case of a different character, and the cases cited by the

plaintiff upon this branch of the case, we think, are inapplicable.

We are of opinion that the offer to confess judgment and the tender made that day were ample in amount to cover all that plaintiff was entitled to recover.

The judgment of the district court was right, and is

AFFIRMED.