MR. U INC., A CORPORATION, ET AL., APPELLEES, V. MOBIL OIL CORPORATION, A CORPORATION, APPELLANT, IMPLEADED WITH NEBRASKA-IOWA CAR WASH, INC., A CORPORATION, ET AL., APPELLEES.

249 N. W. 2d 909

Filed February 9, 1977. No. 40776.

Robert D. Mullin and Timothy J. Pugh of Boland, Mullin & Walsh, for appellant.

Robert L. Matthews, Jr., and Lyle E. Strom of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellees Mr. U Inc., et al.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and COLWELL, District Judge.

BOSLAUGH J.

This is an appeal in an action to quiet title. The plaintiffs are the owners of a triangular shaped tract of land near 78th and Dodge Streets in Omaha, Nebraska. In 1970, the plaintiff corporation, Mr. U Inc., leased a part of the property to John W. Sanders. The lease provided Sanders would construct a car wash and gasoline station on the property.

The lease to Sanders also provided the lessor would execute and deliver a mortgage on the property in the amount of $60,000 to secure a loan from a third party to the lessee in that amount. In accordance with the terms of the lease, Mr. U Inc., executed and delivered a mortgage in the amount of $60,000 to Mobil Oil Corporation to secure a loan of that amount to Sanders.

Sometime in June or July of 1972, Sanders became in default on the lease. On December 1, 1972, Mr. U Inc., Sanders, and Nebraska-Iowa Car Wash, Inc., en-

tered into a modification of lease agreement. The modification agreement provided for an assignment of the Sanders' lease to Nebraska-Iowa and the substitution of the West Omaha National Bank as mortgagee in place of Mobil. Nebraska-Iowa agreed to obtain financing in the amount of $100,000 from the bank and a release of the Mobil mortgage. Mr. U Inc., agreed to execute a mortgage to the bank in the amount of $57,958, the balance due on the Mobil mortgage.

On December 7, 1972, a meeting was held at the bank apparently for closing the transfer from Sanders to Nebraska-Iowa. The meeting was attended by Steve Urosevich, the president of Mr. U Inc.; Sanders; Leonard Stoller and Eldon Hickerson, representing Nebraska-Iowa; Lloyd Kitrell, the executive vice-president of the bank; David S. Hamilton, the district sales manager of Mobil; and Douglas Reno, an attorney representing Urosevich and Mr. U Inc.

When Hamilton arrived at the meeting he was requested to sign on behalf of Mobil an agreement that had been prepared by the bank and executed by Mr. U Inc., Nebraska-Iowa, and the bank. The agreement provided in substance that Mr. U Inc., would execute a new mortgage to the bank, Mobil would release its mortgage, but the bank would not disburse any funds to Mobil until it had received a release from Mobil and it was determined that the bank mortgage was a valid first lien on the property. Hamilton refused to sign the agreement because he did not have authority to sign such an agreement or a release of the mortgage on behalf of Mobil.

Although the bank knew the amount due on the Mobil mortgage as of that day, payment in the form of cash or a check was not offered to Hamilton. Kitrell later testified that payment to Mobil was offered only through the form of the agreement.

At one point during the meeting Hamilton asked Reno what would happen if Mobil was to "drag their feet"

in connection with the release of the mortgage. Reno replied that it might be a slander of title.

On December 8, 1972, Reno wrote to Hamilton stating that the bank held funds sufficient to pay the mortgage and that in exchange for an accounting of the amount due and a release of the mortgage the funds would be disbursed to Mobil. Reno requested that a release be made available within the next 7 days. On the same date Kitrell wrote to Hamilton enclosing a copy of the agreement that Hamilton had refused to sign at the meeting on the day before. The letter stated that the bank had $58,047.49 available to pay the Mobil mortgage and that the agreement indicated "the terms under which payment should be granted to Mobil Oil Corporation." The letter also requested an accounting of past payments and stated the bank would disburse the amount due Mobil at the time a release was available. Hamilton immediately forwarded both letters to the proper officers of Mobil.

Although the record is not entirely clear, apparently Nebraska-Iowa went into possession under the modification of lease agreement and operated the car wash until sometime in 1973 when it ceased operations. Nebraska-Iowa was in default under the lease after July 1973.

In April 1973, Nebraska-Iowa advised the bank to not disburse any funds to pay the Mobil mortgage. Sanders has been adjudicated a bankrupt.

This action was commenced October 16, 1973, to cancel the lien of the Mobil mortgage on the theory that payment had been tendered to Mobil on December 7, 1972, and on several other occasions during the next 5 months. The trial court found that a tender had been made on December 7, 1972, which had been rejected by Mobil because it failed to accept it within a reasonable time and that the lien of the mortgage was extinguished and discharged. The plaintiffs were also awarded a judgment for damages in the amount of $100

against Mobil under section 76-255, R. R. S. 1943. Mobil has appealed.

Mr. U Inc., relies upon the rule that under certain circumstances a tender of the amount due upon a mortgage discharges the lien. It has been said that such relief is most drastic, and, to obtain the same in an equitable action, the right thereto must clearly appear; that the rule is a harsh one, penal in nature, and courts have shown no disposition to extend it; that the principle should not be pressed beyond its strict limits; and in order to discharge the lien, the proof must be clear that the refusal was palpably unreasonable, absolute, arbitrary, and unaccompanied by any bona fide, although mistaken, claim of right. See Hilmes v. Moon, 168 Wash. 222, 11 P. 2d 253.

The rule was stated in Security State Bank v. Waterloo Lodge, 85 Neb. 255, 122 N. W. 992, as follows: "It is a general rule, to which it is possible there may be exceptions under special circumstances, that the tender of the exact sum due upon a mortgage debt upon the 'law day' in accordance with the terms of the instrument operates to discharge the mortgage lien, and, whether there are any exceptions to this rule or not, we think this case does not afford room for doubt."

In the Security State Bank case, the mortgagor tendered the amount due in cash at the bank where the mortgage was payable upon an "interest pay day" in accordance with the terms of the note. The tender was repeated later on several occasions, and after the foreclosure action was commenced the mortgagor offered to confess judgment for the amount tendered. On these facts this court held the mortgagee was not entitled to foreclosure; that the mortgagee could not recover more than the amount that had been tendered; and that upon payment of that amount to the clerk by the mortgagor the petition should be dismissed and a release delivered.

The facts in the case at bar are quite different. One

of the principal issues is whether a valid tender was ever made. If there was no tender the plaintiffs cannot succeed on the theory that the lien of the mortgage was extinguished by a tender.

A tender is more than a mere offer to pay. It is an offer to perform coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom the tender is made, the condition or obligation would be immediately satisfied. Caha v. Nelson, 195 Neb. 333, 237 N. W. 2d 870. A tender is the offer of a sum of money in satisfaction of a debt and is made by producing and showing the amount to the creditor and expressing verbally a willingness to pay it. Tompkins v. Batie, 11 Neb. 147, 7 N. W. 747. See, also, Linch v. Nebraska Buick Auto. Co., 120 Neb. 819, 235 N. W. 456.

If any tender was made in this case it was made by the bank. Neither Urosevich or Sanders had any funds with which to pay the mortgage. Nebraska-Iowa had arranged for the $100,000 bank loan but the money to be used for payment of the Mobil mortgage was never advanced to Nebraska-Iowa. The bank retained control over this money.

The tender which the bank made was at best conditional and equivocal. The agreement presented to Hamilton at the meeting on December 7, 1972, stated that the bank would disburse no funds to Mobil until it had received a release of the Mobil mortgage and it was determined the bank mortgage was a valid first lien against the property. The letter from Kitrell to Hamilton on December 8, 1972, stated that the agreement indicated the terms under which payment would be made to Mobil by the bank, and that the amount held for payment of the mortgage was $58,047.49, the amount due as of December 7, 1972. This was not a tender which Mobil was required to accept and was not sufficient to extinguish the lien of the mortgage.

Although there was testimony to the effect that the

bank would have produced the funds to pay the mortgage if Mobil could have furnished a release at the meeting on December 7, 1972, we find it not persuasive. Hamilton had no prior notice of the purpose of the meeting, was not requested to bring a release, and was not authorized to sign a release on behalf of Mobil or the agreement which the bank had prepared. More importantly, at that time the bank did not know whether its mortgage would be a valid first lien.

Kitrell's testimony at best was equivocal. Although he testified the funds would have been produced if a release had been available he also testified "the primary concern" was that Mobil would agree to the terms of the agreement which the bank, Mr. U Inc., and Nebraska-Iowa had executed but which Hamilton refused to sign; that the bank did not disburse the $58,047.49 to Nebraska-Iowa because "the bank wanted to maintain control of it until such time as we had Mobil's agreement. Q. You mean a release on the mortgage? A. A release would have been part of it or at least an arrangement for a release."; that the bank did not offer the $58,047.49 to Mobil at the meeting on December 7, 1972, except through the form of the agreement; that the bank did not offer cash or a cashier's check to Mobil; the bank's position was that it would not deliver payment until such time as a release was prepared for exchange; that the agreement enclosed with the letter of December 8, 1972, indicated the terms under which payment would be granted to Mobil; that the bank would not disburse funds to Mobil until a release was received and it was determined that the bank mortgage was a valid first lien; and that at the time of the meeting on December 7, 1972, it had not been determined that the bank mortgage was a valid first lien.

The bank mortgage was not recorded until December 12, 1972, and the abstract was extended some time after that. Although Kitrell testified the abstract when extended showed the bank mortgage to be a second mort-

gage, the bank did not advise Mobil that the bank had determined it's lien was subject only to the Mobil mortgage. Mobil had no duty to furnish a release until the mortgage was paid, and it clearly had no duty to guarantee the bank that there were no intervening liens between the two mortgages.

Mobil had no duty to furnish a release until after the mortgage had been paid. Section 76-255, R. R. S. 1943, provides that if after full performance of the condition of a mortgage, the mortgagee fails to execute or acknowledge a certificate of discharge or release of the mortgage within 7 days after being requested to do so and being tendered his reasonable charges, the mortgagee shall be liable to the mortgagor in the sum of $100 damages and all actual damages occasioned by such neglect or refusal. Under this statute a mortgagee has 7 days after payment of the mortgage and a request for a release to furnish the release.

We have held this statute is highly penal in nature and strict compliance with its terms is required. Bangs v. Gray, 60 Neb. 457, 83 N. W. 680; Gurske v. Kelpin, 61 Neb. 517, 85 N. W. 557. The duty to release the mortgage arises when the debt has been paid. William Deering & Co. v. Miller, 33 Neb. 654, 50 N. W. 1056. The judgment awarded the plaintiffs against Mobil under section 76-255, R. R. S. 1943, was clearly erroneous. A mortgagor has no cause of action under the statute until there has been "full performance of the condition of the mortgage."

The plaintiffs suggest that Karnes v. Barton (Tex. Civ. App.), 272 S. W. 317, is a similar case. In the Karnes case the plaintiff alleged the defendant held a judgment based on a vendor's lien on the plaintiff's land. On several occasions the plaintiff tendered the full amount of the lien to the defendant, but the defendant refused to execute a release unless the plaintiff also paid an additional unsecured indebtedness. The petition sought to cancel the lien and enjoin a sale

of the land. The trial court sustained a demurrer to the petition, which order was reversed on appeal. The appellate court held that the refusal to accept the tender suspended the defendant's right to enforce his lien unless the defendant signified a willingness to do equity and accept the tender and the plaintiff then refused to pay or keep good the tender.

In discussing whether the refusal of a tender discharges the lien, the court said: "* * * the general conclusion of our courts, and of the great weight of authority, seems to be that a refusal to accept tender of a debt secured by a vendor's lien upon land does not as a matter of law cancel and discharge the lien, where no damages or injury result as a consequence of the refusal to accept tender. Tender under such circumstances merely stops interest and costs from the date of tender. Many reasons have been given for this rule. One reason is that to hold tender so cancels the lien would be nothing less than a forfeiture, and our courts do not favor forfeitures. Another reason is that since a refusal of tender does not discharge the debt, it should not discharge the lien securing it, for the lien is only an incident of the debt. Still another reason is that a cancellation of the security for the debt would in many instances destroy the debt. * * * it may be said that as a general rule equity will cancel a lien for wrongful refusal to accept a proper tender of the debt secured, where the refusal is without reasonable cause and results in injury to the tenderer. Equity will not, however, in every instance cancel a lien because the lienholder wrongfully refuses to accept a proper tender of the debt secured, but will inquire into the facts and circumstances of each case and where justice demands it, the enforcement of the lien will be enjoined until the lienholder signifies a willingness to do equity as the situation requires and receives the tender. These rules are salutary and are enforced to save a lien, as well as the debt secured, from forfeiture."

In the case at bar there is no evidence that Mobil ever refused a valid tender or stated that it would not release the mortgage until the unsecured indebtedness of Sanders to Mobil had been paid. There was testimony that Hamilton was concerned about the unsecured indebtedness of Sanders, which was about $20,000, and at the meeting on December 7, 1972, Hamilton asked Reno what would happen if Mobil delayed furnishing a release. However, the evidence is undisputed that Hamilton promptly forwarded both the Reno letter and Kitrell's letter to the proper officers of Mobil with a request that a release be processed. There is no evidence that Mobil ever conditioned a release of the mortgage upon payment of the unsecured indebtedness of Sanders.

The record does not show how the plaintiffs were damaged by the delay in obtaining the release from Mobil. If a release had been furnished the land would now be encumbered by the bank mortgage instead of the Mobil mortgage. However, if the lien of the Mobil mortgage is discharged, the practical effect is to cancel the debt because Sanders is now a bankrupt. Where a discharge of the lien results in the discharge of the debt the court may refuse to discharge the lien. Easton v. Littooy, 91 Wash. 648, 158 P. 531.

Upon consideration of the record as a whole we have concluded that the part of the judgment of the District Court finding that the lien of Mobil Oil Corporation was extinguished, that the plaintiffs' title to the land should be quieted as against Mobil Oil Corporation, and that the plaintiffs should recover damages in the amount of $100 against Mobil Oil Corporation was erroneous and should be reversed; that the judgment in all other respects should be affirmed; and that the cause should be remanded for further proceedings.

AFFIRMED IN PART AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.