711 P.2d 1387

Peter H. NAUMBURG and Haila H. Naumburg, husband and wife, Plaintiffs-Appellants,

v.

Buell N. PATTISON and Jean D. Pattison, husband and wife, Defendants-Appellees.

No. 15351.

Supreme Court of New Mexico.

Dec. 30, 1985.

**650**

Simons, Cuddy & Friedman, Daniel H. Friedman, Santa Fe, for plaintiffs-appellants.

Garrett, Richards & Associates, David F. Richards, Clovis, for defendants-appellees.

## OPINION

SOSA, Senior Justice.

Due to defendants' refusal to accept prepayment on a real estate contract, plaintiffs, relying on the Residential Home Loan Act (RHLA), sought a declaratory judgment, an injunction and damages. Defendants answered and brought a counterclaim seeking recission in the event the trial court declared plaintiffs' right to prepay. The trial court found that the RHLA did not apply; nevertheless, the court held that plaintiffs were entitled to prepay the contract provided they also pay defendants a reasonable penalty for prepayment. We reverse the trial court except as to the issue of tender.

The pertinent facts are that on September 30, 1982, plaintiffs Peter and Haila Naumburg entered into a real estate contract with defendants Buell and Jean Pattison for the purchase of a tract of land and house in Taos County, New Mexico. Under the terms of the contract, the purchase price of the property was $120,000.00, payable as follows: (1) a down payment in the amount of $20,000; (2) the interest on the remaining balance of $100,000.00 at a rate of 20 percent per annum to be paid in ten equal annual installments of $20,000.00, beginning on September 30, 1983; (3) the remaining balance to be paid in one lump sum payment of $100,000.00 on September 30, 1993.

The contract contained the provision that "[b]uyer shall *not* have the right of prepayment during the pendency of the contract." On April 11, 1983, however, plaintiffs' attorney wrote a letter to defendants' attorney stating:

> In behalf of my client Peter Naumburg, I hereby notify you that Peter will shortly pay the outstanding balance on the Real Estate Contract between the parties dated September 30, 1983 [sic]. I note a prohibition against prepayment in that contract. I have advised Peter that said clause is unenforceable under State law * * *.

Nine days later, defendants' attorney wrote in response:

> This will acknowledge your letter of April 11, 1983. I am of the opinion that prohibition against prepayment is enforceable, although a prepayment penalty or premium would not be.
>
> I would be most appreciative if you would site [sic] any authority you might have for your conclusion that [the prepayment prohibition] is unenforceable.

I have provided a copy of your letter to my client and have advised him that he has the right to receive payments under the contract as outlined * * *.

On April 28, 1983 plaintiffs filed a four count complaint. Count I requested that the court declare the prepayment prohibition unenforceable under the RHLA, NMSA 1978, Sections 56–8–22 to –30 (Cum. Supp.1982). In Count II, plaintiffs sought a permanent injunction, enjoining defendants from enforcing the prepayment prohibition and requiring defendants to direct the escrow agent to deliver the Warranty Deed upon payment by plaintiffs of all sums currently due. Count III requested the award of damages in the amount of $150,000.00 for defendants' arbitrary refusal to allow prepayment. And finally, Count IV alleged that in making the loan to plaintiffs, defendants had failed to comply with NMSA 1978, Section 56–8–11.2 (Cum.Supp. 1982) and that defendants should, therefore, forfeit all interest, charges or other advantages of the sale.

After a bench trial, the trial court concluded in its Judgment and Order that the RHLA did not apply "because the property was not purchased by [p]laintiffs as a principal residence, is not a residence within the definitions of the Act, and the real estate [c]ontract is not a home loan as defined in the Act." Relying on common law, rather than the Act, the court found that the contract was a valid, binding and enforceable contract between the parties except for the absolute prohibition against prepayment. Plaintiffs were to be allowed to prepay but defendants could extract a reasonable prepayment penalty, in an amount determined by the court.[1] Nevertheless, the court found that plaintiffs' letter of April 11, 1983 constituted an invalid tender of prepayment.

On appeal, plaintiffs' main contentions are that: (1) the RHLA does apply because the property in question is a residence as defined in the Act; (2) the complete prohibi-

tion against prepayment is a penalty and, therefore, specifically forbidden by the Act; (3) the letter sent by plaintiffs' attorney constituted a valid tender; in the alternative a formal tender was not required since defendants manifested the intention to refuse prepayment; and (4) the defendants are liable for any damages resulting from their refusal to accept prepayment. Defendants answer each of these points on appeal and, furthermore, cross-appeal on the ground that the trial court erred in holding the prepayment prohibition unenforceable under common law principles.

## I. Applicability of the Residential Home Loan Act

The RHLA forbids a lender from requiring a penalty or premium for the prepayment of the balance of indebtedness. § 56–8–30. This restriction only applies to real estate contracts made for the purchase of a "residence". "Residence", in turn, is defined as "a dwelling and the underlying real property designed for occupancy by one to four families * * *." § 56–8–24 A.

Plaintiffs argue that, at the time of purchase, the lot contained a log cabin, which was clearly a single-family, residential structure; that they made improvements to the cabin after purchase, to make it "more attractive for single family use"; and that they intended to use it for recreational purposes, though the best and highest use would be commercial. Defendants, relying on the trial court's findings below, contend that the property is located in the center of a commercial area; that prior to putting the property up for sale, defendants had taken steps to develop the property commercially; that the Naumburgs' residence is in Santa Fe and that the property in question is nothing more than a "recreational second-home" which the Naumburgs use sporadically; and that the RHLA was not meant to benefit sophisticated buyers.

In interpreting the statutory definition of "residence", we must ascertain the legisla-

---

1. In the trial court's estimation, a reasonable penalty for prepayment would be $120,000.00, as of September 30, 1983, plus interest accrued as of that time, or that amount reduced by one-tenth each year, if prepayment occurs in any year after 1983.

tive intent from the language used and words will be given their ordinary meaning unless a different intent is clearly indicated. *Davis v. Commissioner of Revenue,* 83 N.M. 152, 153, 489 P.2d 660, 661 (Ct.App.), *cert. denied* 83 N.M. 151, 489 P.2d 659 (1971). Section 56-8-24 A is plain and unambiguous in defining a residence as a dwelling designed for occupancy by one to four families. Our task, then, is to review the record to determine whether the log cabin falls within this definition.

The record reveals that, at the time of purchase, the log cabin was a structure designed for single-family use, notwithstanding its location in a commercial area. The cabin contained three bedrooms, a family room, a kitchen, and a bathroom. Furthermore, it is undisputed that plaintiffs intended to use, and did in fact use, the property for recreational and not commercial purposes. Thus, the property clearly fits the statutory definition of residence.

To answer each of defendants' claims, specifically, we note first that the Act contemplates protecting purchasers of dwellings intended to house four families or less regardless of whether the dwellings are located in residential or commercial areas. The RHLA makes no distinctions based on the locale of the property. Second, although the record reveals that defendants had begun excavation in front of the cabin to put in a parking lot, this does not render the dwelling commercial. Third, Section 56-8-24 A contains no requirement that the dwelling be the primary family residence. Hence, it makes no difference that the log cabin was a vacation home. We will not presume, absent some indication to the contrary, that the Legislature intended to limit the protection of the RHLA to primary family residences. Lastly, in response to defendants' recurring argument that the RHLA was not intended to protect sophisticated purchasers of real estate, such as Mr. Naumburg, we find no indication, either express or implied that the RHLA applies only to unsophisticated and naive purchasers of real estate. Unless and until the Legislature directs other-

wise, we assume that the Act applies to all New Mexicans who purchase a residence designed for occupancy by one to four families.

The trial court erred in finding that the RHLA did not apply to the real estate contract between the Naumburgs and the Pattisons.

## II. Complete Prohibition Against Prepayment as a Penalty

Having determined that the RHLA applies to the contract in question, we next consider whether the complete prohibition against prepayment is a penalty forbidden by the Act. Section 56-8-30 provides that "[n]o provision in a home loan, the evidence of indebtedness of a home loan, a real estate contract or an obligation secured by a real estate mortgage requiring a penalty or premium for prepayment of the balance of the indebtedness is enforceable." Plaintiffs argue that a complete prohibition against prepayment is as much a penalty as requiring a surcharge when prepayment occurs. Defendants assert that the RHLA does not apply and that under common law principles, a purchaser has no right to prepay, absent a contract provision allowing him to do so. Thus, defendants reason, prohibiting that which one has no right to do cannot amount to a penalty.

We observe that since the RHLA applies, it confers upon plaintiffs the statutory right to prepay the balance of the contract and we need not resort to common law doctrines, as defendants advocate. It is self-evident that a complete prohibition against prepayment is a penalty of the most extreme kind and, thus, is forbidden by the Act. We note that the trial judge had no difficulty in concluding that if the RHLA applied to the contract in dispute, the complete prohibition against prepayment contained in the contract would constitute an unlawful penalty. The prohibition against prepayment is unenforceable under the terms of the RHLA.

## III. Validity of the Prepayment Tender

The trial court found that plaintiffs' attorney's letter of April 11, 1983 was not a tender of prepayment since it merely evidenced an *intention* to prepay. Plaintiffs assert that the letter was a sufficient tender, especially in view of the fact that Mr. Naumburg testified at trial that at the time the letter was sent, he was ready, willing and able to make full payment. In the alternative, plaintiffs argue that even if the letter were not a sufficient tender, a formal tender was not required since defendants' attorney's letter of April 20, 1983 rejected plaintiffs' offer to prepay.

■ New Mexico has no statute or cases which define what constitutes a valid tender. The general common law rule, however, is that

[a] tender is more than a mere offer to pay. It is an offer to perform coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom the tender is made, the condition or obligation would be immediately satisfied * * *. A tender is the offer of a sum of money in satisfaction of a debt and is made by producing and showing the amount to the creditor and expressing verbally a willingness to pay it.

*Mr. U. Inc. v. Mobil Oil Corp.*, 197 Neb. 612, 617, 249 N.W.2d 909, 912 (1977) (citations omitted). *See also Action Development Corp. v. Woodall*, 21 N.C.App. 567, 571, 205 S.E.2d 592, 596 (1974); *Dunn v. Ligon*, 430 S.W.2d 704, 707–08 (Tex.Civ. App.1968); *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975). In the instant case, plaintiffs' letter states that "Peter will shortly pay the outstanding balance * * *." Clearly, this was not an offer to pay coupled with the actual production of the amount owing. Rather, it was an offer to pay the balance at some uncertain time in the near future. Hence, it was not a proper tender.

Plaintiffs attempt to excuse the insufficient tender by reliance on *Guthrie v. Curnutt*, 417 F.2d 764 (10th Cir.1969). There it was stated "[w]hen a party, able and willing to do so, offers to pay another a sum of money and is told that it will not be accepted, the offer is a tender without the money being produced." *Id.* at 765–66. Plaintiffs reason that since defendants' letter manifested an intention not to accept prepayment, the money need not actually have been produced. Plaintiffs misconstrue *Guthrie*. In that case, the person seeking to tender money met with the creditor personally and at the time of the meeting, the tenderor carried the actual amount he owed with him. He offered to pay the sum and the creditor refused. The circuit court of appeals held that the tenderor need not actually have counted out the cash or presented a cashier's check since the creditor indicated that he would not accept the offer. In *Guthrie*, but for the non-cooperation of the creditor, the tenderor's obligation would have been immediately satisfied.

■ In the case before us, the Pattisons' attorney indicated that his clients would *probably* decline the Naumburgs' written offer to prepay money available at some *indeterminate time* in the near future.[2] Thus, the Naumburgs were not excused from a formal tender under *Guthrie*, and the trial court was correct in concluding that no tender of prepayment had been made.

There being no valid tender of prepayment, we need not address plaintiffs' fourth point that they are entitled to damages for defendants' refusal to accept prepayment. ·

For all the foregoing reasons, we reverse and remand for proceedings not inconsistent herewith.

IT IS SO ORDERED.

---

**2.** We recognize that there are statutes which allow the tenderor to offer, in writing, to pay a debt without requiring the tenderor to actually produce the money—provided he has the money, in fact. *See e.g.* Cal.Civ.Proc.Code § 2074 (West 1983). New Mexico, however, has no such provision.

FEDERCI, C.J., and RIORDAN, and WALTERS, JJ., concur.

STOWERS, Justice, dissents.

STOWERS, Justice, dissenting.

I dissent with the majority opinion for several reasons. To begin with, the Taos realty purchased by the Naumburgs is not protected by the Residential Home Loan Act (Act), NMSA 1978, Sections 56–8–22 to –30 (Cum.Supp.1982); therefore, the Act is not applicable to this case. The purpose of the Residential Home Loan Act is to provide certain rights and protections to New Mexicans when they purchase a residential home, i.e. a residence. "A 'residence' is the place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; the house where one's home is, a dwelling house." *Perez v. Health and Social Services*, 91 N.M. 334, 337, 573 P.2d 689, 692 (Ct.App.1977), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978). The evidence indicates that the Naumburgs' residence, i.e. home, is in Santa Fe, not Taos. The Naumburgs never intended to make the real property in Taos their home. The trial court found that they purchased the Taos realty as a recreational investment property with the intent of using it only sporadically until it was resold. For this reason, the Residential Home Loan Act does not apply.

Secondly, the absolute prohibition against prepayment is not a penalty forbidden by Section 56–8–30. Section 56–8–30 merely states that a contract provision which requires a *penalty* or *premium* for prepayment is not enforceable. (Emphasis added.) In interpreting statutes we are bound to give words used in a statute their ordinary meaning unless a different intent is clearly indicated. If a statute makes sense as written, then we should not read into a statute language that is not there. *Perez*, 91 N.M. at 336, 573 P.2d at 191. In this case, the real estate contract does not include a provision which requires a penalty or premium; therefore, the contract is not contrary to Section 56–8–30. Moreover, Section 56–8–30 does not provide a complete prohibition against prepayment, nor can one be read into the statute. If the Legislature had intended to impose an absolute prohibition against prepayment, they could have simply said "contract provisions which prohibit prepayment are unenforceable." The Legislature did not do this. Therefore, the contract in this case is not prohibited by or contrary to Section 56–8–30 because it includes a provision which prohibits prepayment before a specified time.

Furthermore, I would reverse the trial court on the Pattisons' cross-appeal. In their cross-appeal, the Pattisons state that the trial court erred in holding that the prepayment prohibition clause in the parties' real estate contract is unenforceable. I agree with the Pattisons that the prepayment prohibition clause is enforceable under common law doctrines. Enforceability of the prepayment prohibition clause is supported by the general rule of law that a contract purchaser, promissory note payor, or mortgagor has no right of prepayment without the specific granting of such a right. *See* 91 C.J.S. *Vendor and Purchaser* § 103C (1955); 77 Am.Jur.2d *Vendor and Purchaser* §§ 302–303 (1975); 59 C.J.S. *Mortgages* § 447A (1949); 10 C.J.S. *Bills and Notes* § 462 (1938); 55 Am. Jur.2d *Mortgages* § 397 (1971). The above authorities indicate that a vendor is not obligated to accept payment by a vendee before the time fixed for performance and that if a contract fixes the time for payment, the contract will control. Therefore, because the Naumburgs entered into the contract with the knowledge and understanding that the real estate contract specifically prohibited prepayment, the prohibition against prepayment is enforceable and the Naumburgs have no right of prepayment.

For the above reasons, I dissent.