GAINER BANK, formerly known as Gary National Bank, not personally but as Trustee under a Trust Agreement dated January 10, 1955, and known as Trust No. P–1935; Bongi Cartage, Inc., an Illinois Corporation, Appellants–Defendants Below,

v.

The COSMOPOLITAN NATIONAL BANK OF CHICAGO, a National Banking Association, Appellee–Plaintiff Below.

No. 64A03–9105–CV–127.

Court of Appeals of Indiana,
Third District.

Sept. 18, 1991.

James Kingsland, Herbert S. Lasser, Herbert S. Lasser & Assoc., PC, Merrillville, for appellants-defendants.

Robert A. Pete, Gastevich & Pete, Crown Point, for appellee-plaintiff.

STATON, Judge.

Gainer Bank and Bongi Cartage, Inc. appeal a grant of summary judgment in favor of Cosmopolitan National Bank on its complaint to foreclose mortgage, raising two issues for our review, which we consolidate as one:

Whether a mortgagee has an implied duty to facilitate the sale of a portion of the real estate before pursuing its right to foreclose under the mortgage.

We affirm.

On February 21, 1986, Bongi Cartage, Inc. executed a promissory note in the amount of $750,000 pursuant to a revolving line of credit with Cosmopolitan National Bank of Chicago (Bank). The note was secured by a mortgage from Gainer Bank, as trustee of a certain trust, on the subject real estate located in Lake County. Bongi was apparently the sole beneficiary of the trust. We will hereinafter refer to Gainer Bank and Bongi Cartage collectively as "Bongi."

At some point, Bongi defaulted on its payments on the note, and on January 12, 1990, Bank filed a complaint to foreclose the mortgage.

In Bongi's answer to the complaint, it admitted that it was in default, but as an affirmative defense requested that the foreclosure be delayed. In support of its request, Bongi alleged that it had been in contact with The Nature Conservancy, a national tax-exempt organization dedicated to the preservation of the wetland environment. The Nature Conservancy expressed an interest in acquiring an 80–acre tract of the subject real estate. Interestingly, the Gary Sanitary District also expressed an interest in the property; it could be used as a sludge landfill. However, no firm offer could be made by the Sanitary District until approval could be obtained from the relevant state and federal agencies.

Bongi further alleged that in November of 1987, Bongi learned that the real estate had been placed on the Indiana CERCLIS list due to possible violations of the federal Clean Water Act, 33 U.S.C. §§ 1311, 1342, and 1344. On August 25, 1988, the EPA found that the land was in fact in violation of the Act, and mandated a cleanup. Bongi began negotiations with The Nature Conservancy, the substance of which contemplated that The Nature Conservancy would be granted the 80–acre tract of land for a nominal price in return for doing the neces-

sary remedial work. Bongi alleged, however, that in order for the agreement to become final, Bank was required to release its lien on the 80 acres. Bongi alleged that the Bank had refused to do so. It therefore prayed for a delay of the foreclosure to facilitate the reaching of a negotiated settlement.

Nonetheless, the foreclosure proceeded, and summary judgment was granted to Bank on October 23, 1990. Bongi filed a motion to correct error, which was deemed denied on January 7, 1991. Bongi appeals, arguing that summary judgment was not appropriate because Bank had a duty not to hinder Bongi from fulfilling its contractual obligations by selling the property.

Bongi cites no authority directly on point which would establish that Bank had such a duty. Instead, it relies upon general principles of law and equity contained in *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. den.* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476, *appeal after remand* 264 Ind. 77, 339 N.E.2d 57; *First Federal Savings Bank v. Key Markets* (1988), Ind.App., 532 N.E.2d 18; and *Sandor Development Co. v. Reitmeyer* (1986), Ind.App., 498 N.E.2d 1020, *transfer denied.* In *Skendzel*, our supreme court determined that to apply a forfeiture clause in a land contract offended equitable principles where a large part of the contract price had been paid, and mandated foreclosure instead of forfeiture. In *Sandor*, which involved a assignment clause in a lease, the court found that the lessor had failed to use due diligence to mitigate damages and unreasonably withheld consent to an assignment. The *Key Markets* opinion was reversed and vacated on the issue upon which Bongi relies in *First Federal*

*Savings Bank v. Key Markets* (1990), Ind., 559 N.E.2d 600 *(Key Markets II)*.[1]

The situation in the present case, involving a mortgage where the mortgagor is already in default, is distinguishable from the above cases.[2] A mortgagee's duty to release its mortgage on real property is governed by statute in Indiana. Ind.Code 32–8–1–1; 32–8–11–5 (1988). The statutory duty arises only upon *"full payment* of the sum or sums of money therein specified from the mortgagor." IC 32–8–11–5. *Accord Mr. U Inc. v. Mobil Oil Corp.* (1977), 197 Neb. 612, 249 N.W.2d 909; *Stovall v. Liberty Plan of America, Inc.* (1966), Okla., 414 P.2d 242; *Weninger v. First National Bank* (1950), 170 Kan. 83, 223 P.2d 716. Here, Bongi had not tendered full payment; in fact, it was in default. Thus no duty had arisen.[3]

Bank was merely exercising its contractual and statutory right to foreclose:

> When default is made in the performance of any condition contained in a mortgage, the mortgagee, or his assigns, may proceed in the circuit court of the county where the land lies, to foreclose the equity of redemption contained in the mortgage.

IC 34–1–53–1 (1988). We find no error.

Affirmed.

HOFFMAN and CHEZEM, JJ., concur.

**1.** *Key Markets II* was handed down on September 10, 1990; Bongi's brief was filed on May 29, 1991, eight months later. It can hardly be disputed that proper verification of legal authority facilitates appellate review. We will assume that the omission was not knowingly made, but was rather the result of oversight. Cf. Rule of Professional Conduct 3.3(a).

**2.** The reader will note that the remedy afforded here, foreclosure, is the same as that found appropriate by our supreme court in *Skendzel.*

**3.** *See also Florida Hay and Land Developers, Inc. v. McDill Columbus Corp.* (1989), Fla.App., 539 So.2d 570 (Failure to release a portion of the mortgaged premises not a breach of contract where it occurred after mortgagors failed to make payment, which had the effect of terminating the contract).