**SANDOR DEVELOPMENT COMPANY, Plaintiff-Appellant,**

**v.**

**John F. REITMEYER, Fern E. Reitmeyer Conservatory of Music, Inc., and Kadel's Holiday Shoppe, Inc., Defendant-Appellees.**

No. 1–1185A302.

Court of Appeals of Indiana, First District.

Oct. 27, 1986.

Rehearing Denied Dec. 4, 1986.

B. Michael McCormick, McCormick Law Firm, Terre Haute, for plaintiff-appellant.

Robert H. Duffy, Patrick L. Duffy, Duffy & Duffy, Terre Haute, for defendant-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Sandor Development Co. (Sandor), appeals a judgment of the Parke Circuit Court in favor of defendant-appellees, John F. and Fern E. Reitmeyer (the Reitmeyers), Conservatory of Music, Inc. (Conservatory), and Kadel's Holiday Shoppe, Inc. (Kadel's).

We affirm.

## STATEMENT OF THE FACTS

Sandor operates a shopping center known as the K-Mart Plaza. On January 10, 1968, Sandor entered into a lease agreement with the Reitmeyers. The lease was for a five-year period, beginning on March 1, 1968, and terminating on the last day of February 1973. On October 1968, Sandor consented to a request by the Reitmeyers to sublet adjoining space that had originally been leased to Kadel's, subject to the continuing liability of Kadel's. Kadel's lease was for a seven-year term, beginning on March 1, 1966, and ending on the last day of February 1973.

The leases were nearly identical, and contained purpose clauses regarding the uses of the premises. The Reitmeyers' lease described their business use as the "sale of musical instruments, financing musical instruments, accessories, parts, lessons and associated products," while Kadel's was described as a "gift shop, greeting cards, jewelry and related gift items." The purpose clauses also provided that the premises "shall be used for no other purpose and shall not be otherwise occupied except upon and with the written consent of the Lessor first had." The leases allowed Sandor to "re-let" the premises upon default:

"Without such action being deemed an acceptance of a surrender of this lease or in any way terminating the lessee's liability hereunder, and lessee shall remain liable to pay the rent, herein reserved, less the net amount realized from such re-letting, after deduction of any expenses incident to such repossession and re-letting, or the lessor at its option may

without further notice to the lessee terminate this lease. Should the sum realized from such re-letting by the lessor, after deducting the costs and expenses of repairs or alterations and the expenses of re-letting, be less than the rentals reserved herein, the lessee agrees to pay such deficiency each month upon demand therefor...."

They also provided that Sandor could recover from the lessees all costs and reasonable attorney fees incurred in enforcing the terms and provisions of the leases.

On August 25, 1972, the Reitmeyers timely exercised their option to renew the leases for another five-year term, under the same terms and conditions as before. The termination date of this second lease period was February 28, 1978. On October 1, 1973, Sandor accepted an assignment of the leases by the Reitmeyers to the Conservatory, a corporation wholly-owned by the Reitmeyers, subject to the continuing liability of the Reitmeyers and Kadel's.

In early May 1976, the Reitmeyers sent a letter to Sandor, indicating that they were preparing to move the Conservatory from the K-Mart Plaza to a different shopping center. In the letter, the Reitmeyers, through their attorney, stated that there were "many reasons" behind their decision to relocate, but alluded to defects in the premises. The letter then stated that the Reitmeyers sought Sandor's consent to an assignment of their leases or, in the alternative, to a termination of the leases. The letter indicated that the Reitmeyers planned to move out sometime in July.

On May 20, 1976, the Reitmeyers tendered a written proposition to Sandor. This document recited that Bernard Strange, who operated a retail carpet store, was willing to become an assignee of the Conservatory's leases, subject to Sandor's consent. Relying upon the purpose clauses of the leases, Sandor rejected the proposition.

The Conservatory paid rent through June 1976, and completed its move from the K-Mart Plaza a month later. Following

this abandonment, Sandor sent notices of default to Kadel's, the Reitmeyers, and the Conservatory. Sandor continued its efforts to secure other tenants, which it had begun before the Conservatory's abandonment. After contacting a number of businesses, Sandor was able to lease a portion of the premises to Majestic Paints, beginning on April 15, 1977, and another portion to the Pop Shoppe, beginning on October 1, 1977.

Sandor filed a complaint against Kadel's, the Reitmeyers, and the Conservatory on October 8, 1976, seeking as damages the rent that had accrued and would accrue in the future, costs, and attorney fees. In their Answer, the former tenants asserted as defenses the allegations that Sandor had acted unreasonably in rejecting Bernard Strange as a tenant, and that Sandor's failure to repair the defects in the premises amounted to a constructive eviction, releasing their obligations to pay rent.

A bench trial was held on March 26, 1985. At this trial, Sandor's managing partner testified that he had rejected Strange, not only because of an inconsistent use, but also because of a bad experience with another carpet store in the past. He stated that he contacted Strange subsequent to the rejection for the purpose of making an offer, but he was too late, for Strange had already leased premises elsewhere. The managing partner also testified that he had actively sought other tenants, both before and after the Conservatory vacated the premises, and several letters to various businesses were admitted into evidence to support this assertion.

The trial court entered its findings and conclusions on July 30, 1985. It determined that the defects in the premises did not constitute constructive eviction because the Reitmeyers had renewed the leases in spite of them. It also reasoned that, although the abandonment was improper, Sandor had received reasonable notice of it along with the proposition for an assignment, and had a duty to mitigate damages. The trial court concluded that Sandor had acted unreasonably in rejecting Bernard Strange as a tenant in reliance on the purpose clause, because purpose clauses are used primarily to prevent conflicts among shopping center tenants, not to limit uses where no conflict exists. Therefore, since there was no other carpet store in the K-Mart Plaza, Sandor's rejection was unreasonable. The trial court entered judgment for Kadel's, the Reitmeyers, and the Conservatory.

Sandor filed its Motion to Correct Error on September 27, 1985, which was denied on October 21. From that denial Sandor brings this appeal.

## ISSUES

We have combined and restated the issues presented. It is as follows:

Whether the trial court erred in concluding that Sandor's failure to consent to the lease assignment was unreasonable, thus releasing the tenant from the obligation to pay rent, where the lease contained a purpose clause, required the consent of the landlord to assign it, and where the proposed assignee's intended use was not specifically consistent with the purpose clause.

## DISCUSSION AND DECISION

Sandor argues that the trial court erred in concluding that it acted unreasonably in rejecting the Conservatory's proposed assignee. Sandor bases this argument on the ground that its right to reject proposed assignees was unconditional and, therefore, it had no duty to act reasonably to mitigate damages.

Where a trial court has made findings of fact and conclusions of law, we will consider only that evidence and reasonable inferences therefrom which support the judgment, and will set aside the findings and conclusions only where they are clearly erroneous. *Die & Mold, Inc. v. Western* (1983), Ind.App., 448 N.E.2d 44.

Sandor argues that, because the lease does not contain a mandatory re-letting clause, it had no duty to mitigate damages. We disagree.

When an abandonment occurs, a re-letting clause allows a landlord to re-enter and re-let the premises, while the abandoning tenant remains liable for any deficiency in lease payments. This type of clause

benefits both parties; the landlord is allowed to make the premises productive without waiving any rights against the former tenant, while the former tenant receives the benefit of new tenants reducing or eliminating any deficiency. *See* 2 R. *Powell, The Law of Real Property,* para. 231[1] (P.Rohan ed. 1977).

■■■ The lease in the instant case contained a permissive re-letting clause, but this court has held that, although a re-letting clause may not be mandatory, a landlord is still required to use such diligence as would be exercised by a reasonably prudent person under similar circumstances to re-let the premises if possible; this is a question for the trier of the fact. *Hirsch v. Merchants National Bank & Trust Co. of Indiana* (1975), 166 Ind.App. 497, 336 N.E.2d 833. Where the re-letting clause is not mandatory, the burden of proof is on the abandoning tenant to show as a matter of defense that due diligence was not exercised, but the duty to mitigate damages still rests upon the landlord. *Grueninger Travel Service of Ft. Wayne, Indiana, Inc. v. Lake County Trust Co.* (1980), Ind.App., 413 N.E.2d 1034. Clearly, Sandor had a duty to mitigate damages.

Sandor goes on to assert that if we find it had such a duty, it was not required to increase its obligations beyond those set forth in the leases by accepting an assignee with a business use inconsistent with that of the former tenant, the Conservatory. Sandor cites *Carpenter v. Wisniewski* (1966), 139 Ind.App. 325, 215 N.E.2d 882, *trans. denied,* in support of its argument.

Again, since Sandor is appealing from a negative judgment, the focal point of our review is not whether Sandor should have conducted itself in a certain manner, but whether the trial court could have found that in acting as it did, Sandor did not exercise the diligence a reasonably prudent person would have exercised under similar circumstances to re-let the abandoned premises.

■■■ The trial court concluded that Sandor's refusal to consent to the Conservatory's assignment of the leases to Bernard Strange was unreasonable, as the "primary

objective of the purpose clause was to maintain a viable 'retail' establishment in the shopping center, not necessarily to limit the activity to particular items of sale...." *Record* at 396. We agree.

At the trial, Sandor's managing partner testified that:

"[p]urpose clauses exist in leases to obtain a variety of uses in the shopping center. Shopping center differs from a single tenant occupied building. You've got to have various types of businesses in a shopping center in order to stimulate business, create traffic and bring people to the shopping center. So you restrict the use that a particular tenant can do with his premises in order not to create conflicts among all the tenants in the center. You wouldn't want three or four of them doing the same thing and nobody doing any business in that particular center."

*Record* at 147.

On cross-examination, the managing partner admitted that there was no other carpet store in the K-Mart Plaza at the time Sandor rejected Bernard Strange as an assignee. Indeed, from the record, it appears that Sandor's refusal of the proposed assignment was based on a negative experience with a prior carpet store tenant. However, Sandor made no attempt to determine the viability of Strange's business operation.

After rejecting Bernard Strange's carpet business solely on the basis of the purpose clause, Sandor attempted to re-let the premises and sent letters to three shoe companies, a photo-developing company, a muffler installer, an import company, a handicrafts shop, and a tile flooring company. At some point during this search for new tenants, Sandor contacted Bernard Strange, but he had already leased premises elsewhere. Only after Sandor filed its complaint did it make any attempt to contact other music stores. Sandor's conduct shows that a wide variety of businesses would have been acceptable as tenants.

Sandor's conduct differs significantly from that of the landlord in *Carpenter, supra.* In *Carpenter,* the landlord reject-

ed every proposed tenant in reliance on the lease's purpose clause, which stated that the premises was to be used as a drug store. Here, Sandor rejected one prospective tenant on the basis of an inconsistent use, and then solicited other tenants, ultimately leasing to two, who all operated businesses inconsistent with the purpose clause. Sandor's conduct displays the significance it placed on the purpose clause.

The trial court found that Sandor's refusal to consent to the proposed assignment was based solely on the lease's purpose clause and "not because of any inability of the proposed tenant to pay rent or for any other reason," and that this conduct was unreasonable as a matter of law. *Record* at 396. Based upon our examination of the record, we do not believe the trial court's findings and conclusions are clearly erroneous. Accordingly, the judgment is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J. concur.