FIRST FEDERAL SAVINGS BANK OF INDIANA, Appellant (Defendant Below),

v.

KEY MARKETS, INC., an Indiana Corporation, Appellee (Plaintiff Below).

No. 45A03–8803–CV–79.

Court of Appeals of Indiana, Third District.

Dec. 27, 1988.

R. Brian Woodward, Anderson & Tauber, P.C., Merrillville, Stephen E. Smith, Siemon, Larsen & Purdy, Chicago, Il., for appellant.

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, for appellee.

STATON, Judge.

First Federal Savings Bank of Indiana (First Federal) brings this interlocutory appeal from a declaratory judgment and permanent injunction entered in the Lake Superior Court in favor of Key Markets, Inc.[1] Two issues are presented for our consideration on appeal:

1. Whether the trial court erred in determining that a landlord may not unreasonably withhold consent to assignment of a lease where the lease required consent but was silent on whether consent could be unreasonably withheld?

2. Whether the trial court erred in determining that a landlord was not entitled to cancel a lease where a tenant requested consent to an assignment?

Affirmed.

This action involves certain real estate known as Sheffield Commons Shopping Center (Sheffield Commons) located in Dyer, Indiana. The original development plans for Sheffield Commons began in 1975, and included the construction of a supermarket to be operated by Burger's Supermarkets, Inc. (Burger's). A one acre tract of land within the area comprising Sheffield Commons was sold to Trust # 3375 by Joseph McLaughlin, the original real estate developer, for the purpose of building a supermarket. However, McLaughlin retained title to the adjoining property in order to maintain control of the real estate. The supermarket real estate lacked adequate parking and had limited access but for the remainder of the Sheffield Commons real estate. In light of this, McLaughlin agreed to lease additional land in Sheffield Commons to Burger's for the purpose of parking and access. A parking lot lease was entered into by both parties on March 1, 1976. On March 2, Burger's and McLaughlin entered into a common area easement agreement in order to provide for a fully integrated shopping center and parking lot.

Having secured access and parking, Burger's entered into a lease with Trust # 3375 for the supermarket real estate on May 11, 1976. Burger's thereafter constructed the supermarket and parking lot while McLaughlin constructed the remainder of the shopping center. Burger's opened its supermarket in Sheffield Commons in 1977.

In January of 1985, Key Markets succeeded to Burger's interests in the supermarket lease, parking lot lease and common area easement agreement following a series of prior assignments. All lease and easement assignments leading up to and including Key Markets were consented to

1. Indiana Rules of Procedure, Appellate Rule 4(B)(6).

by McLaughlin. In October of the same year, First Federal succeeded to the interests of McLaughlin in the parking lot lease, common area easement agreement, and remainder of the shopping center by way of mortgage foreclosure.

Key Markets entered into negotiations with Babincsak Enterprises, Inc. (Babincsak) for the sale of its supermarket business at Sheffield Commons in the fall of 1987. On November 18, 1987, while verbal agreements between Key Markets and Babincsak were being reduced to writing, Key Markets sent a letter to First Federal requesting its consent to assign the parking lot lease and common area easement agreement to Certified Grocer's, Inc., who would in turn sublet the supermarket and parking lot to Babincsak. An anticipated closing date of December 5, 1987, was indicated.

Negotiations between First Federal and Key Markets for the proposed assignment failed. On December 11, 1987, First Federal notified Key Markets by letter that it was cancelling the parking lot lease by reason of the proposed assignment, relying on Article X, Section 10.01(b) of said lease.

Before Key Markets received notice of the lease cancellation, it vacated the supermarket premises in accordance with its agreement with Babincsak. The closing of Key Markets' sale to Babincsak was scheduled for December 14 but never occurred because of First Federal's refusal to consent to the assignment of the parking lot lease.

On December 21, 1987, Key Markets filed a complaint in the Lake Superior Court seeking declaratory and injunctive relief as well as damages stemming from First Federal's cancellation of the lease. The trial court conducted a hearing upon Key Markets' application for a preliminary injunction on January 5, 1988. At the conclusion thereof, the trial court granted Key Markets' motion to consolidate and advance the hearing on the merits for the issues of whether First Federal could unreasonably withhold consent to assignment and whether First Federal had the right to cancel the lease.[2]

On March 1, 1988, the trial court entered its order determining that First Federal had a legal duty not to unreasonably withhold consent to assignment and further had no right to cancel the lease. First Federal was permanently enjoined from enforcement of its cancellation of the lease on the sole motivation of a requested assignment in connection with the sale of business. Reserved for subsequent trial on the merits were the issues of: (1) whether the need to seek consent to an assignment was waived; (2) whether First Federal unreasonably withheld consent to assignment, and; (3) the amount of damages and attorney's fees to be awarded, if any.

## I.

### Consent Clause

The first issue of this controversy concerns provision 10.01(a) of the parking lot lease, which reads as follows:

> Except for an assignment to a "Corporate Affiliate" of Tenant, Tenant shall not assign this lease or sublet all or a portion of the Demised Premises without the consent of Landlord.

The trial court determined that consent may not be unreasonably withheld not withstanding the absence of limiting language in the lease so requiring, thus engrafting on the end of this provision the phrase "which consent shall not be unreasonably withheld."

First Federal contends that, absent a recital in this provision of the intent that the lessor's consent could not be unreasonably withheld, the lessor may arbitrarily and capriciously refuse consent. First Federal correctly points out that this traditional common law view is still endorsed by a majority of jurisdictions. *See* 21 ALR4th 188, "Withholding Consent—Assignment of Lease," § 3. However, we agree with the trial court that the better reasoned, more equitable rule is that requiring commercial reasonableness in refusal of consent to assignment by the lessor absent a stated intent to the contrary.

2. Indiana Rules of Procedure, Trial Rule 65(A)(2).

This appeal comes to us with the benefit of a detailed memorandum provided by the trial court, within which is incorporated a comprehensive analysis of the issue at hand we would be hard pressed to improve upon and will refer to in salient portion. However, as this involves a matter of pure legal construction, we are not bound by the conclusions of the trial court. *See Ohio Casualty Insurance Co. v. Ramsey* (1982), Ind.App., 439 N.E.2d 1162, *trans. denied.*

Each of the parties to this case present an Indiana case which they argue is dispositive of the issue. In support of its argument, First Federal relies on the holding of *F.W. Woolworth Co. v. Plaza North, Inc. et al.* (1986), Ind.App., 493 N.E.2d 1304, *trans. denied.* In *Woolworth*, a landlord leased a portion of its shopping center to Woolworth so that it might operate a Woolco Department Store. The portion of the lease pertaining to assignments and subleases provided the following:

> *Except as hereinafter provided, the Tenant agrees not to assign, mortgage, pledge or encumber this lease without first obtaining the written consent of the Landlord....* The Tenant is hereby given the right to assign this lease to a corporation substantially all of the stock of which is owned by the Tenant, and to sublet the demised premises or any part thereof, but not withstanding such assignment or subletting the Tenant shall continue liable for the performance of the terms, conditions and covenants of this lease. *The Tenant agrees that Tenant will not without the prior written consent of the Landlord, which consent the Landlord agrees not unreasonably to withhold,* sublet to a supermarket so long as Standard Supermarket occupies and continues doing business in the space designated 'Standard Supermarket' on the drawing attached to and made a part of Schedule "A" hereof.

*Id.* at 1308. (Our emphasis.)

After Woolworth ceased operations and entered into an agreement to sublease the premises to a third party, the landlord filed a complaint for injunctive and declaratory relief on the grounds that the sublease was actually an assignment in violation of the lease. The court of appeals held the transaction to be a sublease not prohibited by the overlease.

First Federal bases its argument that "reasonableness" cannot be read into a lease assignment provision on the implicit holding in *Woolworth* that, had the transaction been determined to have been an assignment, the landlord's refusal of consent could have been arbitrarily and capriciously withheld. First Federal's argument is correct but only as a matter of contractual construction limited to the facts of the *Woolworth* case. The trial court in the case before us made a distinction we agree with. The highlighted portions of the assignment sublease quote, *supra,* indicate a freely negotiated agreement that only where a sublease was contemplated would reasonableness be required of the landlord in withholding his consent. The use of a "reasonableness" requirement in regard to subletting and, in the same paragraph, failure to require reasonableness in the face of a proposed assignment clearly indicates that the parties chose where reasonableness would be required and where it would not. Conversely, the First Federal lease agreement neither negatively nor affirmatively indicates that the parties contemplated whether reasonableness in refusal of consent to assignment was required. As a result, we are left to construe an ambiguity by determining and applying the law rather than, as in *Woolworth,* relying on the "four corners" doctrine to construe a contract's provisions.

Another Indiana case relevant to the issue before us is *Sandor Development Company v. Reitmeyer et al* (1986), Ind. App., 498 N.E.2d 1020, *trans. denied.* Both the trial court and Key Markets rely heavily on the *Sandor* case in support of the proposition that Indiana law requires reasonableness of landlords in refusal of consent to assignment. First Federal argues with equal vigor that *Sandor* cannot be extended beyond its facts. A discussion of the case will shed light on the difficulty of relying on it for the purposes of the issue at hand.

Sandor operated a shopping center, two sections of which were leased to parties known as the Reitmeyers. Several times, Sandor consented to the Reitmeyers' requests to sublet their leaseholds to businesses, not all of which conformed to the purpose clauses of their contracts, i.e., sale of musical instruments, music lessons, etc. Eventually, the Reitmeyers sought Sandor's consent to assign both leases to a retail carpet outlet. Sandor refused consent, relying on the purpose clauses.

After the Reitmeyers abandoned the leasehold, Sandor sought other tenants from a wide variety of businesses including the retail carpet outlet he had initially rejected. Sandor sued the Reitmeyers after having relet, seeking rent accrued and accruing. The trial court determined that Sandor had a duty to mitigate damages and had unreasonably rejected the carpet retailer in reliance on the purpose clauses.

On appeal, we stated the rule that a landlord is required to "use such diligence as would be exercised by a reasonably prudent person under similar circumstances to relet the premises if possible." *Id.* at 1023. It was on the basis of this reasonableness requirement regarding mitigation of damages that Sandor's argument, i.e., that his right to reject proposed assignees under the "use" clause was unconditional, was rejected.

In the case before us, the "mitigation" rule has no application. Thus, we conclude that *Sandor* is too factually and procedurally different from *First Federal* to be relied on as precedent requiring the injection of a reasonableness element into the clause we deal with here, even though a duty of reasonableness was injected where none was contractually required. However, we have considered outside authority on the matter which has persuaded us that the trial court ultimately reached the correct conclusion.

In *Fernandez et al. v. Vazquez* (1981), Fla.App., 397 So.2d 1171, the Florida court of appeals discussed the continuing erosion of the arbitrary and capricious rule in the United States. It was therein noted that the law generally favors free alienation of land, which resulted in the common-law tenet that a lessee has the right to assign his leasehold interests without the consent of the landlord where a consent requirement was not engrafted on the lease. The current trend away from the arbitrary and capricious rule, as stated by the *Fernandez* court, is based on, "the now well-accepted concept that a lease is a contract and, as such, should be governed by the general principles of good faith and commercial reasonableness. One established contract principle is that a party's good faith cooperation is an implied condition precedent to performance of a contract. Where that cooperation is unreasonably withheld, the recalcitrant party is estopped from availing herself of her own wrongdoing." *Id.* (Citations and footnotes omitted.)

Likewise, many other states have adopted a "commercial reasonableness" test in renouncing the arbitrary and capricious rule. In doing just that, the supreme court of Alabama stated, "... in recent times, the necessity of reasonable alienation of commercial building space has become paramount in our everincreasing urban society." *Homa–Goff Interiors, Inc. v. Cowden* (1977), Ala., 350 So.2d 1035, 1039, *reh. denied. See also Boss Barbara, Inc. v. Neubill* (1982), 97 N.M. 239, 638 P.2d 1084; *Shaker Building Co. v. Federal Lime & Stone Co.* (1971), 28 Ohio Misc. 246, 277 N.E.2d 584; *Jack Frost Sales, Inc. v. Harris Trust & Savings Bank* (1982), 104 Ill.App.3d 933, 60 Ill.Dec. 703, 433 N.E.2d 941.

The need for the injection of a reasonableness requirement is readily apparent in light of the facts before us. To conclude that First Federal may arbitrarily and capriciously withhold consent in this instance would render the supermarket property virtually useless for lack of parking and possibly force the owner of the property to sell against his will. This result would run directly contrary to the basic concepts of free alienation and fair dealing. Restrictions on alienation are not looked on with favor by the courts, and are to be strictly construed against the lessor. *Drake v. Eggleston* (1952), 123 Ind.App. 306, 108 N.E.

2d 67, *trans. denied.* There is an implied covenant to act in good faith between lessor and lessee. *Woolworth, supra.*

We think that the requirement of reasonableness of the lessor in this instance is no more than a means of ensuring good faith, and is in keeping with the overall preference in Indiana for free alienation of land. Consequently, we conclude that the trial court correctly determined that reasonableness is required in refusal of consent to assignment of a commercial lease in the absence of more limiting language. Whether or not First Federal acted reasonably under the circumstances is a question for the factfinder.[3]

## II.

### Cancellation Clause

First Federal's second contention is that the trial court erred as a matter of law by determining that First Federal was not entitled to cancel the parking lot lease, as it attempted on the authority of Article X, Section 10.01(b) thereof. This subsection provides:

> Except for an assignment to a "Corporate Affiliate" of tenant or an assignment in connection with the sale of the business of Tenant, Landlord shall have the option to cancel this Lease by giving notice thereof to Tenant within thirty days after Tenant notifies Landlord of the proposed assignment. If Landlord cancels this Lease in accordance with this Section, both parties shall be relieved of liability under this Lease.

The undisputed fact that Key Markets' proposed assignment was in connection with the sale of its business would foreclose further discussion of this issue were it not for subsection (c) of the same article and section. Subsection (c) contains a glossary of terms relevant to Section 10.01, including the following:

The term, "sale of the entire business of Tenant" means the sale of all of the stock of the Tenant and all of the stock of more than 75% of Tenant's Corporate Affiliates to a single person; a merger, consolidation or pooling of assets of Tenant and at least 75% of Tenant's Corporate Affiliates with another corporation; or the sale of all of the assets of Tenant and all the assets of at least 75% of Tenant's Corporate Affiliates to another person.

Key Markets' proposed assignment did not fall into the category defined under "sale of entire business." First Federal argues that subsection (c)'s definition of "sale of entire business" controls subsection (b)'s reference to "assignment in connection with the sale of business," pointing out that nowhere in Section 10.01 but in subsection (b) could this definition even arguably apply. Thus, cancellation was an option if we read the provisions together. In the alternative, Key Markets argues the literal language of the lease, contending that, since subsection (b) does not refer to a "sale of entire business," subsection (c) does not apply.

The rules of contractual construction come keenly into play here and ultimately determine the outcome of this issue. First Federal contends that the ambiguity involved is of the patent variety, and thus parol evidence is inadmissible to determine the intent of the parties. At first blush, it would appear that First Federal is correct in this assertion. A patent ambiguity arises because of an inconsistency or inherent uncertainty of language used so that it conveys no definite meaning or a confused meaning. *Hauck v. Second National Bank of Richmond* (1972), 153 Ind.App. 245, 286 N.E.2d 852, 862, *trans. denied.* First Federal points out that subsection (c) exists as a glossary of terms relevant to Section 10.01, and the only subsection to

---

**3.** The *Fernandez* court set forth a test we find instructive on proper considerations for a commercial reasonableness standard:

"The following factors are among those which a jury may properly consider in applying the standards of good faith and commercial reasonableness: (a) financial responsibility of the proposed subtenant (b) the 'identity' or 'business character' of the subtenant, i.e., suitability for the particular building, (c) the need for alteration of the premises, (d) the legality of the proposed use, and (e) the nature of the occupancy, i.e., office, factory, clinic, etc." *Fernandez, supra.*

which it arguably applies is subsection (b). Thus, the trial court must insert the word "entire" into subsection (b) in order to harmonize the provisions and effectuate the intentions of the parties. However, as the trial court points out, the thirty-page parking lot lease contains many typed but unused subsections and appears to be based upon a form. The reasonable inquiry, then, is whether the word "entire" was omitted intentionally from subsection (b), or whether it was mistakenly retained as a definition for a stricken subsection.

The separate problem arose in contemplating First Federal's assessment of how to resolve the ambiguity. The trial court determined that, to insert the word "entire" into subsection (b) and thus allow First Federal to cancel the lease on the basis of the proposed assignment in this case would render the lease on the whole internally inconsistent. Another basic tenet of contract law is that a court must examine an entire contract to ascertain the intent of the parties expressed in the language used. *Tastee–Freez Leasing Corp. v. Mildwid* (1977), 173 Ind.App. 675, 365 N.E.2d 1388, 1390, *trans. denied.* The meaning of a contract must be determined by reading all of its provisions together, rather than singling out individual words, phrases, or paragraphs. *Id.*

The trial court made a special finding of fact in this case that the parking lot lease, supermarket lease, and common area easement agreement are an interrelated set of documents, and thus must be construed together. First Federal does not bring this finding to issue, and so we accept it as true.[4] Instruments which are executed as parts of the same transaction and pertain to the same subject matter must be construed together to determine the intentions of the parties. *East Side Mercury Sales, Inc. v. Charlie Stuart, Inc.* (1962), 134 Ind.App. 538, 179 N.E.2d 204, 208, *trans. denied.*

The easement agreement provides, in salient part:

1. The parking lot lessee must construct a supermarket, while the parking lot lessor is allowed to construct a mall.

2. After construction is completed and the premises open for business, "the Shopping Center shall be operated as a unified shopping center."

3. Nothing shall be done to restrict the free flow of traffic.

4. Cross-easements are granted and the parking lot area is restricted to parking.

5. Restrictions are placed on the types of businesses which may be operated from the supermarket building.

6. The supermarket is required to operate continuously and minimum hours are established.

7. Each party agrees to keep its buildings in good repair at all times.

8. Each party agrees to promptly discharge all mechanics' liens.

9. Each party agrees to carry fire insurance on its premises and to restore any fire loss to its own premises.

10. The easement agreement terminates if the lease terminates by failure to exercise an option to release.

Taking these summarized provisions in conjunction with the parking lot lease, the indicated intent of the parties involved is established as one to secure for the lessee a supermarket, with parking and access, integrated into the whole of Sheffield Commons, so long as a supermarket business could be conducted from it. This apparent intent is at odds with the construction First Federal would have of subsections (b) and (c) of the parking lot lease, which would render the parking lot severable from the supermarket in all instances but two.

Another inherent inconsistency arises in the parking lot agreement when considering First Federal's proposed construction of subsections (b) and (c). As we stated in the first issue, the law implies that consent to assignment may not unreasonably be

---

4. We would point out, however, that the evidence supports the findings, as the documents have common commencement and expiration dates and cross reference each other. *See* *Indiana Broadcasting Corp. v. Star Stations* (1979), 180 Ind.App. 207, 388 N.E.2d 568 (we review only for sufficiency of a factual determination).

withheld. The trial court correctly pointed out that the consent clause is rendered meaningless when viewed from First Federal's proposed construction of subsections (b) and (c), which would allow it to circumvent the consent clause by merely cancelling the lease.

These inconsistencies, resulting from First Federal's proposed construction of subsections (b) and (c) and the application of the "four corners" doctrine, render the overall ambiguity latent. A latent ambiguity emerges in attempting to apply the words of an instrument in the manner thereby directed. *Hauck, supra.* As a result, extrinsic evidence may be, and was in this case, admitted to determine the intent of the parties to the contract. *Fiat Distributors, Inc. v. Hidbrader* (1978), Ind. App., 381 N.E.2d 1069, 1071. Specifically, in cases of ambiguity, negotiations leading up to the lease can be considered to determine the intent of the parties in their use of particular words and phrases. *Arrington et al. v. Walter E. Heller International Corp.* (1975), 30 Ill.App.3d 631, 333 N.E. 2d 50, 56.

Here, Richard Kristoff was allowed to testify conditionally on this determination.[5] He stated that, at the time the contract was executed, it was the parties' intention that an integrated shopping center be developed, and that parking for the supermarket would be provided, via the lease, so long as the lessee operated in conformance to the terms of the lease. Kristoff also stated that there was a reason behind the parking lot lease and land purchase occurring simultaneously: he would not have proceeded to build the supermarket unless parking was assured.

Thus, it was the interpretation of the trial court that it was never the intention to give the landlord the right to cancel simply because of a requested assignment consistent with the lease provisions. To find otherwise would lead to the unsupported conclusion that the purchaser of the supermarket property simply decided to risk the possibility that his land would be rendered commercially useless for lack of parking space almost exclusively at the whim of the landlord.

Finally, First Federal argues vociferously that this construction would render subsection (b) of the parking lot lease virtually meaningless because the exceptions would always apply. First Federal correctly points out that, in construing an agreement, the court is to give effect to every portion of the agreement, where possible. *Linton v. Linton* (1975), 166 Ind.App. 409, 336 N.E.2d 687, *trans. denied.* However, the trial court has correctly pointed out that the cancellation clause is not emasculated by this construction as it, for example, would apply where the lessee assigned anyway following a reasonable refusal of consent by the landlord.

The findings of fact rendered by the trial court are not contested by this appeal; only its conclusions of law. As we have determined that the trial court correctly reached the conclusion that the involved ambiguity was, indeed, latent, thus opening the door for parol evidence, partially upon which it based its finding of fact that it was not the intent of the parties that cancellations be an option in this instance, we conclude that the trial court's judgment must be affirmed.

GARRARD and SHIELDS, P.JJ., concur.

---

5. Kristoff was one of Burger's owners and established the discretionary Trust #3375, which bought the supermarket property, for his children. He acted on behalf of Trust #3375 in obtaining financing to purchase the land.