PETER DRUMHELLER AND AUSTIN IRVING, Appellants-Defendants,
v.
OLYMPUS PROPERTIES, LLC, Appellee-Plaintiff.
No. 53A02-0608-CV-634
Court of Appeals of Indiana.
December 21, 2006
DAVID J. COLMAN, ELIZABETH ANN CURE, Colman & Cure, Bloomington, Indiana, ATTORNEYS FOR APPELLANTS.
DAVID L. FERGUSON, TRACI A. GUNDERSEN, Ferguson & Ferguson, Bloomington, Indiana, ATTORNEYS FOR APPELLEE.

MEMORANDUM DECISION
KIRSCH, Chief Judge.
Peter Drumheller and Austin Irving ("Tenants") appeal a judgment in favor of Olympus Properties, LLC ("Landlord") for damages resulting from the breach of a lease between Tenants and Landlord. Tenants raise one issue, which we restate as whether the trial court erred when it found that Landlord had properly mitigated its damages.
We affirm.

FACTS AND PROCEDURAL HISTORY
On November 18, 2002, Tenants entered into a lease with Landlord for an apartment located in Bloomington, Indiana. The term of the lease was to run from August 27, 2003 until August 18, 2004, and the monthly rent was $950.00, with one month's rent due as a security deposit. On February 17, 2004, Tenants signed a lease renewal, which extended their lease period until August 11, 2005 with monthly rent increased to $975.00. On August 9, 2004, Peter and his mother, Marsha Drumheller ("Mrs. Drumheller"), informed Landlord that Tenants would not be returning and intended to vacate the apartment. Tr. at 8. Although Tenants notified Landlord of their intention to vacate the apartment, Landlord had no record of Tenants returning the keys to the apartment. Landlord advised them of Tenants' continuing obligation to pay the monthly rent for the duration of the lease and of the option to sublet the apartment and that Landlord would try to assist in finding a sublessee. Id. at 9, 64. Landlord's notes from this conversation indicated that Mrs. Drumheller would be contacted with information regarding any potential sublessees. Id. at 9.
Landlord placed several advertisements for the apartment in the Herald Times and the Indiana Daily Student, as well as on the Landlord's own website. On August 17, 2004, Landlord showed the apartment to an individual who was willing to rent it for $700.00 to $750.00 per month. Landlord called Mrs. Drumheller regarding this offer, but she turned the offer down because she wanted to see if they could "get a little higher lease rate." Id. at 47-48. On October 5, 2004, Landlord received an offer from another person to rent the apartment for $800.00 per month, with occupancy to begin in January 2005. Landlord sent a letter by certified mail to Tenants regarding this offer and requesting a written response from them. Pl.'s Ex. F.
After reading the letter, Peter's father, John Drumheller ("Mr. Drumheller"), called Landlord's property manager, Nancy Kaster. He discussed whether Landlord would accept a proposal to pay four months' rent and to relinquish the security deposit in exchange for the immediate termination of the lease. Tr. at 79. Nancy responded that she would need to present the proposal to the owner. Id. at 81. Landlord eventually declined to accept this proposal by Mr. Drumheller. Landlord also never received a written response regarding the October letter, and no agreement was ever reached as to that prospective sublessee.
Tenants' attorney contacted Landlord on November 14, 2004 to direct Landlord to commence an eviction proceeding. Landlord filed such a proceeding on December 16, 2004 and a motion for immediate possession on January 27, 2005. The trial court granted Landlord's motion on January 31, 2005. Landlord was eventually able to lease the apartment for a short-term lease and received $1,733.33 in rent payments. On October 20, 2005, a bench trial was held to determine damages. At the conclusion, the trial court determined that Tenants owed Landlord the following:

 Unpaid rent $11,700.00
 Unpaid utilities $416.16
 Advertising expenses $1,061.41

 Late fees $473.00
 Notice to quit fee $35.00
 Attorney fees $3,965.25

Tenants were entitled to a credit for the security deposit and other payments in the amount of $1,450.00 and for the sublessee's rent payments in the amount of $1,733.33. Therefore, the trial court found that Landlord was entitled to a judgment in the amount of $14,467.40 and also granted Landlord costs for the action in the amount of $111.00 plus interest on the judgment at the rate of eight percent. On January 27, 2006, Tenants filed a motion to correct error, which was denied by the trial court. Landlord was awarded an additional judgment for attorney fees in the amount of $1,225.00 as a result of this denial. Tenants now appeal.

DISCUSSION AND DECISION
Tenants argue that the trial court erred when it concluded that Landlord had made reasonable efforts to mitigate its damages. They contend that because Landlord did not re-let the apartment to two different people who had made offers to rent it, Landlord failed to mitigate the damages, and the trial court committed reversible error when it found otherwise.
When a trial court has entered findings of fact and conclusions thereon, we will consider only the evidence and reasonable inferences therefrom which support the judgment and will set aside the findings and conclusions only where they are clearly erroneous. Clark v. Crowe, 778 N.E.2d 835, 839 (Ind. Ct. App. 2002). Where a party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. Helmuth v. Distance Learning Sys. Ind., Inc., 837 N.E.2d 1085, 1089 (Ind. Ct. App. 2005). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. Id.
When an abandonment occurs, a re-letting clause allows a landlord to re-enter and re-let the property, while the abandoning tenant remains liable for any deficiency in the rent payments. Sandor Dev. Co. v. Reitmeyer, 498 N.E.2d 1020, 1022 (Ind. Ct. App. 1986), trans. denied. "This type of clause benefits both parties; the landlord is allowed to make the premises productive without waiving any rights against the former tenant, while the former tenant receives the benefit of new tenants reducing or eliminating any deficiency." Id. at 1022-23.
The lease in the present case contained a permissive re-letting clause, which stated:
ABANDONMENT: If the Resident abandons (fails to reside on a daily basis for over fourteen (14) days) the Premises, Resident appoints Management as Resident's agent to re-let the Premises. Management may, at its option, take possession of the Premises and re-let same without such action being deemed an acceptance of Resident's abandonment or a surrender of this Lease. Resident shall remain liable to pay the rent specified in this Lease and any costs of re-letting the Premises in addition to any remedies of the Management at law or in equity.
Appellants' App. at 125. Regardless of the permissive nature of a re-letting clause, a landlord is still required to use such diligence as would be exercised by a reasonably prudent person under similar circumstances to re-let the premises. Merkor Mgmt. v. McCuan, 728 N.E.2d 209, 212 (Ind. Ct. App. 2000); Sandor Dev. Co., 498 N.E.2d at 1023. If the landlord's efforts to re-let the premises are successful, the tenant is entitled to a set off in the amount of rents collected from the subsequent tenant. Merkor, 728 N.E.2d at 212. "When the re-letting clause is not mandatory, the burden of proof is on the abandoning tenant to show as a matter of defense that due diligence was not exercised, but the duty to mitigate damages still rests upon the landlord." Sandor Dev. Co., 498 N.E.2d at 1023.
Here, the evidence presented at trial showed that Landlord had placed several advertisements regarding the apartment in two newspapers and also on its own website. Landlord had several appointments to show the apartment, and as a result, it received two offers to rent the apartment. The first was an offer on August 17, 2004 to pay between $700.00 and $750.00 per month for a twelve-month lease. Mrs. Drumheller had indicated to Landlord that she wanted to be notified of any offers to rent the apartment. This offer was presented to Mrs. Drumheller, and she turned it down because she wanted to see if they could get a higher offer. The second offer was on October 5, 2004 for a lease beginning in January 2005 with a rent of $800.00 per month. Landlord sent a letter to Tenants notifying them of this offer and requesting a written response, which Landlord never received. Landlord's property manager testified that because Landlord did not have possession of the apartment at the time of these two offers, the consent of Tenants was required to accept these offers to sublet the apartment. Tr. at 51-52. Mr. Drumheller testified that he spoke with the individual who offered $800.00 per month and admitted that the individual did not seem very interested and never called Mr. Drumheller back. Tr. at 84. Additionally, Tenants' parents had offered to pay $4,850.00 to cover any difference between a lower rent offer and the original rent on the condition that Tenants be allowed to prematurely terminate the lease. This offer was turned down by Landlord.
Tenants had the burden of proof at trial to prove that Landlord had failed to mitigate its damages. The trial court found that Tenants had not met this burden. The evidence presented to the trial court on the question of mitigation of damages was in conflict. Accordingly, constrained by our standard of review, we conclude that Tenants have failed to demonstrate that the trial court's determination was contrary to law.
Additionally, Landlord requests that we grant reasonable appellate attorney fees and costs as provided by the lease agreement. The lease states that Tenants agree to pay reasonable attorney fees and court costs incurred by Landlord because of a breach of any term of the lease. Appellants' App. at 127. "`[A]ppellate attorney fees may be appropriately awarded if a contractual provision calls for them and the party requesting the fees prevails.'" Kruse v. Nat'l Bank of Indianapolis, 815 N.E.2d 137, 151 (Ind. Ct. App. 2004) (quoting Yin v. Soc'y Nat'l Bank Ind., 665 N.E.2d 58, 65 (Ind. Ct. App. 1996), trans. denied). We therefore remand to the trial court for the limited purpose of conducting a hearing to determine reasonable appellate attorney fees.
Affirmed.
SHARPNACK, J., and MATHIAS, J., concur.